HENRY A. BARLING *et al.*

*v.*

WILLIAM H. PETERS, Receiver.

*Filed at Ottawa October 31, 1890.*

1. JUDICIAL SALE—*confirmation of sale—improper conduct on the part of purchaser, officer, etc.—to prevent confirmation.* A sale of land by the master under a decree will not be approved by the court, if fraud or misconduct on the part of the purchaser, the officer conducting the sale, or other person connected therewith, is shown, or if it be made to appear that a party interested has been surprised or led into a mistake by the conduct of the purchaser, officer or other person connected therewith. Confirmation of such sale will not be refused, however, on

134   606
135   13
134   606
143   66
134   606
180   573
180   631
134   606
190   622
134   606
197   393

the motion of an interested party, merely to protect him against the consequences of his own negligence, when he is under no disability to protect his own rights.

2. SAME—*as to sum to be bid—secret agreement—whether affecting validity of sale.* An agreement of a prospective bidder at a judicial sale, not a party to the decree, made with an interested party, to bid at the sale a certain amount necessary to a sale, and a higher sum named if compelled by competing bidders, although kept secret from the other parties to the suit and bidders, is not fraudulent, or calculated in any way to prejudice the rights of other parties in interest. A bidder is not bound to disclose the amount he is willing to bid, rather than lose the land.

3. A party whose interest it is to procure a certain price for a tract of land, and who may have agreed to bid to that amount, may lawfully contract with another person to induce him to become the purchaser at the same price he was to have bid, and such an agreement can not be said to be fraudulent, as stifling bidding or preventing competition.

4. A decree for the sale of land provided that there should be no sale unless at least $600,000 was bid, and that out of the purchase money $505,000 should be paid to certain parties for advances, etc., and also one-half of the balance. The other half of the balance was to be paid to a creditor of another one of the parties, then deceased, to the amount of $83,000. The creditor, through a receiver, entered into a secret agreement with a third party, whereby the latter was to purchase the creditor's interest in the decree in case he became the purchaser of the land, and to bid, if necessary, $760,000 to get the land. The sale was extensively advertised and conducted fairly. Such third party became the purchaser at $602,000, which was a fair price, and it did not appear that any greater sum would be bid on a resale : *Held,* that there was no sufficient ground for refusing to approve the sale, and that a resale was properly denied.

5. SAME—*inadequacy of price.* Where a judicial sale has been conducted in the usual manner, and the purchaser is a stranger to the order of sale, mere inadequacy of price will not justify a court in vacating the sale, so as to deprive the vendee of the benefit of his purchase, unless the inadequacy is such as to amount to evidence of fraud.

6. SAME—*objections to confirmation—evidence—whether oral, or by affidavit.* Upon the hearing of objections to the confirmation of the master's report of a sale of land under a decree, it was proposed to place a witness upon the stand to be examined orally upon the questions involved. This the court refused to allow, and in so ruling there was no departure from the usual practice in such cases,—presenting the proofs by affidavit. It was not shown the matters could not be presented fully and fairly in that way, nor was it made to appear what was expected to be proven on the proposed oral examination.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

On the 20th day of June, 1864, Robert W. Hyman purchased an undivided half of section 21, township 39, north, of range 13, east of the third principal meridian, Cook county, Illinois, for himself and Edward Mott Robinson, the latter furnishing all the money to make the cash payments. The title was taken in the name of Hyman, but he subsequently conveyed it to Robinson, with an agreement that Hyman should sell the premises within one year from that date, unless otherwise agreed upon, Robinson to advance all money to pay taxes and deferred payments to be made before such sale, and, upon the sale being made, the proceeds to be distributed by first reimbursing Robinson for all advances made by him, with interest at the rate of seven per cent per annum, and dividing the balance equally between the parties. On the 24th of September, 1867, they further agreed to purchase the other undivided half of said section, on the same terms, but before this purchase was consummated, Robinson died. By his will, the title to all his real estate was vested in Henry A. Barling, Edward D. Mandell and Edward H. Green, as trustees for his daughter, Hetty H. R. Green. Henry A. Barling and Abner H. Davis were appointed executors of this will, and they proceeded to, and did carry out said last named agreement, taking the title to the other half of said section in their names, and advancing the purchase money therefor, agreeing with Hyman to the same effect as had been agreed between Robinson and Hyman. Hyman was indebted to the Exchange National Bank of Norfolk, Virginia, and he and the said executors agreed in writing with said bank, that on a sale of said lands, said executors should hold Hyman's share of the proceeds, to the amount of said indebtedness, for the benefit of the bank. Subsequently Hyman also died, and Robert W. Hyman Jr. was appointed his administrator. Said bank be-

came insolvent and passed into the hands of one William H. Peters as receiver. He filed his bill in chancery in the Circuit Court of Cook county, against said trustees, said executors, and said Hetty H. R. Green, and said administrator of Robert W. Hyman, deceased, to enforce a sale of said land, and compel said executors to apply Hyman's interest in the funds arising therefrom, to the payment of the said indebtedness to said bank.

On the 9th of April, 1888, a decree was rendered according to the prayer of the bill. It found that the executors of said Robinson were first entitled to receive, out of the proceeds arising from the sale of said land, the sum of $505,414.06, with interest thereon from January 1, 1888, at seven per ·cent per annum, to April 9, 1888, and thereafter six per cent per annum; that one-half of the residue of said proceeds should be paid to said executors; that out of the other half, the sum of $83,426.35, the amount of said Hyman's indebtedness to said bank, with six per cent per annum interest thereon from the date of the decree, should be paid to said William H. Peters, receiver of said bank, and the residue of said half, if any, should be paid to said administrator of Robert W. Hyman, deceased, and it was decreed, "that the joint adventure ·so entered upon during the lifetime of said Robert W. Hyman and said Edward Mott Robinson, evinced by the said contracts, of June 20, 1864, and September 24, 1867, be wound up and closed, and if the amount so found due complainant should not be paid by defendants, or some of them, with in-·terest, within twenty days, section 21 should be sold by George Bass, master, for purpose of distribution of proceeds in accordance with the finding of the decree."

The decree further provides for four weeks' notice, and that the sale shall be for cash; that the premises shall be offered in tracts of ten, twenty, forty, or more acres, and any portion not so sold, in smaller tracts, or the whole of said section, if no portion of the same shall be sold, shall be offered for sale

39—134 ILL.

by the said master; that each bidder, as an earnest of his bid, deposit with the master twenty per cent of the amount bid, before the same shall be struck off to him, and the balance shall be payable when such sale shall have been confirmed by the court and a deed have been made by said master. It was provided also in the decree, that any of the parties to the suit might bid at the sale, "and become purchasers as individuals, and divested of their trust relations." The master was directed to report to the court, with convenient speed, his doings in the premises, and the court reserved the right to reject any and all bids "if said premises shall not produce the sum of $600,000, or for other sufficient cause, and the entry of an order of distribution until the coming in of said report." It was further decreed that the sale so to be made, when confirmed, and the deeds in pursuance thereof, should operate to vest in the purchaser or purchasers, respectively, all the right, title, interest and claim of any of the parties to this suit in or to said section 21, and as an extinguishment of any right or claim of lien thereon, as trustees or otherwise, on the part of said Barling, Mandell and Edward H. Green. It was further ordered, that if upon a sale said section should not produce the sum of $600,000, the bill of complaint should be dismissed at complainant's costs, without prejudice to his right to enforce the indebtedness due from the estate of Hyman to the bank, but not against said section 21, as under the pledges to said bank, made as aforesaid by said Hyman.

That decree was affirmed by this court, the opinion being filed at Ottawa, June 15, 1889, and a petition for a rehearing overruled at the following October term. On the 10th day of January, 1890, the master made his report of sale, stating that, after advertising said premises as directed by said decree, he did, on the 21st of December, 1889, offer the same for sale, first, in parcels, but receiving no bids therefor, he then offered the whole section en masse, and George M. Bogue bid therefor the sum of $602,000, which being the highest and

best bid, and said Bogue having given his certified check for $120,400, being twenty per cent of his bid, the same was struck off and sold to him for said sum of $602,000. To this report, Henry A. Barling, executor, Henry A. Barling, Edward D. Mandell and Edward H. Green, trustees, and Robert W. Hyman Jr., administrator, filed their joint and several objections.

"They jointly and severally object to the confirmation of the master's report of sale filed herein, January 10, 1890, and jointly and severally move and petition the court to reject the bid of $602,000 of George M. Bogue, therein mentioned, and to disapprove and vacate the sale of section 21, of the town of Cicero, therein reported as having been made to the said Bogue on the 21st day of December, 1889, and to order a re-sale of said premises in the above case, in conformity with the decree of sale entered therein, upon such terms as to the court may appear proper, and in accordance with the interests of the parties.

"And as the grounds of said motion and petition, show the court that the said George M. Bogue was not a *bona fide* purchaser under said decree, nor was the sum of $602,000 the entire purchase money agreed to be paid for the premises so sold; that, on the contrary, the said Bogue, although publicly bidding the said sum of $602,000 as and for the entire purchase money of said premises, made such bid under and in accordance with a secret and collusive understanding with the complainant herein, to allow to the said receiver, out of the actual purchase money of said premises to be paid by said Bogue, a further sum of money sufficient to satisfy the claim of the said receiver, and interest up to date of the sale, to-wit, the sum of $91,921.92, which collusive agreement of the said Bogue with the said receiver the said Bogue and the said receiver will carry out upon the confirmation of the present sale, if the same should be confirmed, so that out of such purchase money, and in fraud of the express terms of the decree of sale,

and in fraud of the rights of the petitioners herein, the said Bogue is to pay. the said receiver his said claim in full, and limit the amount to be received by the said Barling from said proceeds, in excess of the account for advances and interest, to one-half the difference between that account and the amount of said Bogue's bid, which one-half, after deducting one-half of $1500 for the estimated costs, would equal only the sum of $12,465.79, it being the intent and purpose of the said Bogue and the said receiver, in the agreement aforesaid, to confine the share and interest of the said Barling and the said trustees in the proceeds of such sale to the amount publicly reported by the said master. as the limit of the purchase to be paid by said Bogue,—all of which agreements are fraudulent and contrary to equity, and were knowingly and willingly kept secret from the undersigned until after the said sale, so that they did not learn of the same until the day following.

"2d. And for that, also, the said Bogue, although, at and up to the time of the said sale, assuming and professing to the undersigned defendants to be an agent of the said receiver for the purpose of furthering a sale to the highest bidder, under and in accordance with the decree of sale in said cause, and undertaking such agency and assuming the duties thereof, was acting under a secret agreement with the Grant Locomotive Works, or the promoters of the organization of a corporation under the laws of the State of Illinois to bear that name, including the said Bogue, as one of such promoters, which agreement had also the consent and co-operation of the said receiver, and was carefully kept from the knowledge of defendants until after the master's sale aforesaid, and was to the effect and substance that the said Bogue, while outwardly professing to the defendants to be the agent of the said re-' ceiver in and about the effecting of a sale of said premises under the decree, should secretly represent the said corporation, or the promoters thereof, or some of them, as the bidders and purchasers of said property; and it was further a

part of said agreement, that said receiver should also publicly
bid at such master's sale as if in competition with the said
Bogue, but in reality under a prior agreement with the said
Bogue, who should be allowed to purchase said premises at as
small an advance above the minimum of $600,000 fixed by
the decree as would suffice to secure the said land to the said
Bogue and his associates and confederates; and it was further
a part of said agreement between said Bogue, as such agent,
and said receiver, that the said receiver would not compete
with the said Bogue at such sale, and that the said Bogue
should be allowed to purchase the said land without compe-
tition from said receiver, and as cheaply as he could from the
said master, and at a bid to be publicly announced and re-
ported by said master to the court, upon the condition that
the said Bogue would pay to the said receiver the claim of the
said receiver in full, with interest down to the date of said
sale, which had been previously figured over between them,
and agreed upon at the sum of $91,921.92, which sum is to
be paid in pursuance of said agreement, provided the parties
thereto can induce this court to confirm said sale and author-
ize a conveyance of the said land to said Bogue.

"And for that the said receiver has abused the process of
this court, and availed himself of the salable value of said land
under said decree, and thereby has secretly sold said premises
for a sum greatly in excess of the sum of $602,000 reported
by said master, all which excess he and the said Bogue intend
to divert to the purpose of paying said receiver's claim in full,
and so to avoid sharing the same with the persons entitled
thereto under said decree, as aforesaid.

"And for that the said premises have been sacrificed, ac-
cording to the sale reported in said report, at the inadequate
sum of $602,000, when the same were worth at least the sum
of $800,000 or $850,000, or thereabouts, and when the pur-
chaser thereof is actually to pay, under this agreement afore-

said, the sum of $681,456.13, or thereabouts, instead of said sum of $602,000."

Also, afterwards, by way of amendment, to said objections, they filed the following:

"And for that the said Peters, who, as receiver, was and is pledgee of the interest of the estate of Robert W. Hyman, deceased, had obtained, by an under-bargain, full payment, or means of payment, and satisfaction of the claim held by him against the estate of said Hyman, out of the purchase money arising from the sale of said section 21, and by means of said under-bargain, and the pretended and collusive sale and assignment of said decree to the purchaser at said sale, has prevented the said claim against said estate from being fully paid and satisfied, as in law and equity it ought to have been; and for that the said purchaser now holds outstanding, as a claim against said estate, an unsatisfied deficit or balance of $79,000, or thereabouts, of said claim, as against the estate of said Hyman."

William H. Peters and George M. Bogue, by their sworn answer, admit the execution of the agreement, a copy of which was made an exhibit to one of the affidavits filed with and in support of the objections, which agreement is in the words and figures following, viz:

"William H. Peters, as receiver of the Exchange National Bank of Norfolk, Virginia, and Bogue & Hoyt, do hereby agree as follows:

"*First*—The said Peters, receiver, agrees to sell to Bogue & Hoyt all right, title, interest and claim which he now has in or to the decree entered on the 9th day of April, 1888, in the circuit court of Cook county, in case No. 62,375, entitled *William H. Peters, receiver, etc.* v. *Robert W. Hyman, Jr., Admr. etc. et al.*, and which amounts to $83,426.35, with interest from the entry of said decree, no payment having been made thereon.

"*Second*—The said Bogue & Hoyt agree to pay the said Peters, receiver, therefor, the sum of $83,426.35, with interest from the 9th of April, 1888, at the rate of six per cent per annum, of which sum $2000 have been paid, and the receipt thereof is hereby acknowledged. The remainder is to be paid as soon as the sale to be made in pursuance of said decree shall have been confirmed by the circuit court of Cook county.

"*Third*—It is understood that unless said Bogue & Hoyt, or a member or representative of said firm, shall become the purchaser of section 21, township 39 north, range 13, east of the third principal meridian, at such sale, and the premises shall be struck off to them and such sale afterwards confirmed by said court, this agreement shall not be binding upon either of the parties hereto, and the sum of money paid, as aforesaid, on account of said purchase, shall be returned to said Bogue & Hoyt.

"*Fourth*—In order to secure said property, Bogue & Hoyt agree to bid up to the sum of $760,912.26, or so much as may be necessary to have the same struck off to said firm or its representatives, it being understood that said firm shall not be required to bid a larger sum, in any event, than such last mentioned sum.

"*Fifth*—It is understood that time shall be of the essence of this agreement, and that upon the payment of the full sum to be paid to said Peters, receiver, he shall execute and deliver to said Bogue & Hoyt any instrument or instruments of writing which shall reasonably be devised or required for the purpose of giving effect to this agreement in carrying out of the intent thereof.

"Witness the hands of said parties this 20th day of December, 1889.

WILLIAM H. PETERS, *Receiver of the*
*Exchange Nat. Bank of Norfolk, Va.,*
By Smith & Pence,
BOGUE & HOYT."

This agreement, they allege, expresses the whole of the contract of the parties thereto in that behalf, and they deny that it was in fact or in intent in fraud of the terms of the decree, or of objectors; they admit that the said agreement was not known to objectors until after said sale, but deny that there was any obligation on their part to disclose the same to them. They deny that said $602,000 was not the entire purchase money agreed to be paid for said land. They deny that up to the time of and at said sale the said Bogue professed to the objectors to be an agent of said Peters, receiver, for the purpose of furthering the sale to the highest bidder, and they further deny that he was then, or has been at any time hitherto, under any duty or obligation to the said objectors, or was bound to disclose to them any of his acts or doings in that behalf; they admit that in bidding for said premises at such sale Bogue was acting for and on behalf of persons engaged in the organization of a corporation to be known as the Grant Locomotive Works, or under a similar name, but they deny that the said Peters was a party to such organization, or had any interest or share therein; they deny that there was any agreement by which it was understood or agreed that said receiver should bid at such sale as if in competition with the said Bogue; they deny that they, or either of them, have abused the process of the court, or have been guilty of any fraud, collusion, deceit or of any act by which the said objectors could have been or were misled or deprived of the opportunity of bidding at the sale; they deny, also, that said premises were sacrificed at said sale or sold for an inadequate price, and they aver that said objectors, not having offered to reimburse the respondent, Bogue, as a purchaser, for his outlays, attorney's fees and expenses, nor for interest thereon, and not having offered to pay any sum for said premises in case of resale, are speculators, and not entitled to the consideration or courtesy of the court.

Messrs. PADDOCK & WRIGHT, and Mr. NEWTON A. PARTRIDGE, for the plaintiffs in error:

Any agreement made for the purpose of reducing competition at a judicial sale, or a sale under process of law, is fraudulent and void; and if the purchaser at such sale is a party to such an agreement, he can take no benefit under his purchase, and the sale will be set aside by the court. *Longwith* v. *Butler*, 3 Gilm. 32; *Jones* v. *Caswell*, 3 Johns. 29; *Thompson* v. *Davies*, 13 id. 110; *Hook* v. *Turner*, 22 Mo. 333; Greenhood on Public Policy, 183; Bateman on Auctions, 121, and note; Rorer on Judicial Sales, sec. 77; Story's Eq. Jur. sec. 293, and note; *Gibbs* v. *Smith*, 115 Mass. 592; *Gardiner* v. *Morse*, 25 Me. 140; *Martin* v. *Blight*, 4 J. J. Marsh. 491; *Coffey* v. *Coffey*, 16 Ill. 141; *Stoker* v. *Greenup*, 18 id. 27; *Mapps* v. *Sharpe*, 32 id. 13; *Devine* v. *Harkness*, 117 id. 145; *Meeker* v. *Evans*, 25 id. 322.

The actual result of the agreement does not control, but the test is, whether the agreement was intended by the purchaser or calculated to reduce competition. *Gibbs* v. *Smith*, 115 Mass. 592; *Thompson* v. *Davies*, 13 Johns. 110; *Longwith* v. *Butler*, 3 Gilm. 32.

Courts of equity supervise all sales under their orders, and may reject, set aside or confirm sales, and may order resales at discretion, as equity may require. The bidder acquires no vested rights until the sale is confirmed. Rorer on Judicial Sales, sec. 394; *Deaderick* v. *Smith*, 6 Humph. 146; *Bussey* v. *Hardin*, 2 B. Mon. 407; *Foreman* v. *Hunt*, 3 Dana, 614; *Owen* v. *Owen*, 5 Humph. 352; 2 Pomeroy's Eq. Jur. sec. 444.

The courts distinguish between sales at law or ministerial sales, and those under the immediate direction of the court, pursuant to its decree. Pomeroy's Eq. Jur. 444; *Bussey* v. *Hardin*, 2 B. Mon. 407; *Foreman* v. *Hunt*, 3 Dana, 614; *Owen* v. *Owen*, 5 Humph. 352.

Messrs. Smith & Harlan, for the defendants in error:

It is only agreements not to compete at a sale that the law condemns. *National Bank* v. *Sprague*, 5 Green, (N. J.) 159; *Phippen* v. *Stickney*, 3 Metc. 384; *Gibbs* v. *Smith*, 115 Mass. 592; *Wicker* v. *Hoppock*, 6 Wall. 94; *Devine* v. *Harkness*, 117 Ill. 145.

Messrs. Lyman & Jackson, for the defendant in error George M. Bogue:

The property was sold for full value, considering that the entire section was sold and the sale was a judicial sale. Affidavits of purchase show the fair cash value of the land on the day of sale. *Comstock* v. *Purple*, 49 Ill. 158; *Duncan* v. *Sanders*, 50 id. 475.

It is no ground for setting aside the sale that the objectors misunderstood what the complainant or the agent of the purchaser proposed to do. *Comstock* v. *Purple*, 49 Ill. 158; *Cooper* v. *Crosby*, 3 Gilm. 506.

The English practice of opening biddings does not apply in this country. *Livingston* v. *Byrne*, 11 Johns. 556; *Williamson* v. *Dale*, 3 Johns. Ch. 290; *Ayers* v. *Baumgarten*, 15 Ill. 447.

The objectors should have brought money into court, or offered to have made an advance bid, or have guaranteed there would be no loss on resale. *Allen* v. *Shepard*, 87 Ill. 316; *Ayers* v. *Baumgarten*, 15 id. 447.

Mere dissatisfaction with a sale, or finding that other parties have overreached them, is no ground to set aside the sale. *Comstock* v. *Purple*, 49 Ill. 158; *Insurance Co.* v. *Oakley*, 9 Paige, 260; *Speck* v. *Pullman Palace Car Co.* 121 id. 33; *McMullen* v. *Gable*, 47 id. 71; *Allen* v. *Shepard*, 87 id. 316.

In the case at bar it can not be shown that the agreement of the purchaser to buy the complainant's claim affected the bidding or prevented competition. It merely placed the purchaser in the shoes of the complainant, and procured a bidder to bid against the other parties in interest. The affidavits

fully show that each party was endeavoring to protect his own interest, and that Hyman used every exertion, independent of Bogue, to procure purchasers at this sale, expending large amounts of money advertising it, and casting advertisements of the sale broadcast over the land. He also bid at the sale, which shows that he did not rely on Bogue to find a purchaser. See, also, *Comstock* v. *Purple,* 49 Ill. 158.

The contract entered into between the complainant and Bogue was lawful, secured bidders at the sale, and was not a contract which prevented competition, and was in every respect proper. *Bradley* v. *Coolbaugh,* 91 Ill. 152; *Phippen* v. *Stickney,* 3 Metc. (Mass.) 387; *Kearney* v. *Taylor,* 15 How. 520; Greenhood on Public Policy, 180-194; *Wicker* v. *Hoppock,* 6 Wall. 94; *Smull* v. *Jones,* 6 Watts & Sarg. 126.

*Hamilton* v. *Hamilton,* 2 Rich. 383, holds that it is proper for persons to associate in order to enable themselves to purchase.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

It will be seen from the foregoing statement, that the grounds upon which the plaintiffs in error oppose the confirmation of the master's report of sale in the Circuit Court were, that by the conduct of the receiver, Peters, and the purchaser, Bogue, they were deceived and misled to their injury; that the agreement between said receiver, and the firm of Bogue & Hoyt, together with the previous negotiations between George M. Bogue and Willard T. Block, representing the Grant Locomotive Works, were calculated to stifle bidding and prevent competition at the sale, and that the property was bid off by said Bogue at a grossly inadequate price.

The well settled rule of law in this country is, that before the approval of a judicial sale, a resale will be ordered, if fraud or misconduct in the purchaser, the officer conducting the sale, or other person connected therewith, is shown, or if

it is made to appear that a party interested had been surprised, or led into a mistake, by the conduct of the purchaser, officer, or other person connected therewith. But courts will not refuse to confirm a judicial sale, or order a resale, on the motion of an interested party, merely to protect him against the result of his own negligence, where he is under no disability to protect his own rights at such sale.

Where a judicial sale has been conducted in the usual manner, and the purchaser is a stranger to the order of sale, mere inadequacy of price will not justify a court in vacating a sale, so as to deprive the vendee of the benefit of his purchase, unless the inadequacy is such as to amount to evidence of fraud. These principles seem to be so universally recognized by the courts of this country, that no authorities need be cited in support of either of them.

The evidence in support of and against the objections was introduced by way of affidavits. From these it appears that, upon the affirmance of the decree of sale by this court, and the overruling of the petition for a rehearing, it was understood by all parties that the master should proceed to advertise, and offer the premises for sale, as directed by the decree. The receiver, through the firm of Bogue & Hoyt, began at once to make efforts to find a purchaser, at a price which would insure a sale, and secure the payment of his claim. This was fully understood by the objectors. Mr. Paddock, one of their solicitors, in his affidavit, says that H. B. Bogue informed him on November 16, 1889, that his firm represented the interests of the complainant, with reference to the approaching sale of section 21. Henry A. Barling, in his affidavit of January 9, 1890, says, that H. B. Bogue told him that his firm had been employed to represent the interests of the complainant, and that they were about to make an effort to induce parties to bid at such sale; that he wished to know whether the sale would take place, so that he might not waste the time of his firm and of himself in the effort to procure

purchasers under the decree. The affidavit of Robert W. Hyman Jr., shows that he also understood that George M. Bogue was acting for Peters, the receiver, in the matter of the approaching sale.

It also appears from the evidence that the firm of Bogue & Hoyt, some time prior to the sale, endeavored to sell the claim represented by the receiver, to the representatives of the Robinson estate, but they refused to purchase it, the son of Mrs. Hetty H. R. Green, who seems to have been conducting the business on her behalf, saying, "that he did not believe that $600,000 or anywhere near that sum could be realized from the premises; that Bogue & Hoyt need not flatter themselves that the complainant would ever get a dollar out of his claim; that nothing would be paid for it by his people." It also appears from the evidence that the administrator of Hyman's estate was unable or unwilling to become a purchaser at said sale, and while he assisted in advertising the property, and made efforts to find bidders, his efforts were unavailing.

The evidence further shows, that George M. Bogue, having previously given the objectors to understand that his firm was acting for the receiver, did, on the 20th day of December, 1889, negotiate with one Willard T. Block, who represented the Grant Locomotive Works, to purchase said property for that company, and the written agreement of that date between the receiver, by his attorneys, and Bogue & Hoyt, was entered into in pursuance of such negotiation; that said Bogue bid in said property for said company, and that objectors were, at the time of the sale, ignorant of any arrangement between the receiver and said locomotive works with reference to said sale; that a few days prior to the sale, at a conference of the parties and their solicitors, it was stated by one of the solicitors for the receiver, with the assent of George M. Bogue, in substance, that the sale would take place, or that the receiver would have a bidder at the sale who would comply with the requirements of the decree. Plaintiffs in error claim, that

the statement went farther, and that they were, in the same connection, assured that a bidder would be present who would purchase said property at a price sufficient in amount to satisfy the receiver's claim in full, under the terms of the decree.

It was admitted that all parties in interest were present at the sale, and that the representatives of both the Robinson and Hyman estates were personally solicited by the master to raise the bid of $602,000, which they declined to do.

Each party introduced the affidavits of various real estate dealers doing business in the city of Chicago, as to the cash value of said section 21, at the date of the sale. Those on behalf of the objectors fixed the value at from $750,000 to $800,000. At least an equal number on behalf of the respondents swear that $602,000 was a fair cash price, and that in their opinion, the sale was a good one. The property was extensively advertised. It is not denied that the sale was fairly conducted on the part of the master, nor is any complaint made of the conduct of the purchaser or any one else at the time of the sale. In fact objectors admit that they were content with the result, until they learned through daily papers the next day, of the transaction between the receiver and the Grant Locomotive Works.

Applying the foregoing rules of law to these facts can it be said that the Circuit Court erred in refusing to set aside said sale? Were the objectors misled, or taken by surprise, by the representations of the receiver, or of Bogue & Hoyt, his agents? It is contended that, having been led to believe that George M. Bogue was acting for the receiver, and that a bidder would be present at his instance, who would bid for said property an amount sufficient to satisfy the bank claim, he had no right thereafter to make an arrangement with the locomotive works to purchase for it, without giving notice to objectors. This contention seems to be based, in part at least, upon the assumption that there existed between the parties a trust relation, imposing upon the receiver some duty to the

objectors in relation to the sale. This is wholly untenable. Whatever may have been the previous relations between the receiver and the Robinson estate, by the terms of the decree they were placed in antagonistic positions. Unless the receiver was able to make the premises bring at least $600,000, all benefit of the decree in his favor would be lost, and his bill dismissed at his costs. In that event the Robinson estate would gain, by a failure to consummate the sale, all that the trustees of that estate had contended for in the protracted litigation which had gone before. While it may be true that there was no disposition to place obstructions in the way of the execution of the decree, it can scarcely be doubted, in the light of all the facts disclosed by this record, that those most directly interested in the Robinson estate, at least indulged the hope that no sale would take place. Nor can it be said that the receiver owed any duty to the Hyman estate with reference to the sale, beyond the duty of fair dealing which he owed to it and to all the other parties concerned.

Viewing the receiver then as relieved from any peculiar obligation to the other parties in interest growing out of any trust relation, was his conduct such as violated those principles of fair dealing which should obtain as between parties who are at liberty to deal with each other at arm's length? As bearing on this question the only substantial conflict in the evidence is as to whether or not objectors were informed, at the meeting of December 17, that the receiver would have a bidder at the approaching sale who would bid enough to insure the payment of his claim. In other words, whether or not, from what was said by the solicitor of the receiver, in that interview, objectors had a right to expect that the receiver, or some one in his interest, would bid a sum amounting to about $760,000. Upon this issue of fact the clear preponderance of the evidence is against the objectors. Not only is their contention on this point directly disputed by the affidavits filed on behalf of the respondents, but it is wholly incon-

:sistent with their conduct at and immediately after the sale. If it be true, as they claim, that they had been assured that the receiver, or some one for him, would bid a sum sufficient to pay the bank claim, which would require, as we have seen, something over $760,000, how is it possible to explain their conduct in standing by and allowing the property to be struck off for only $602,000, without objection, and with no assertion of their alleged understanding, or attempt to bid the property up so as to compel the purchaser to pay the amount agreed upon? Instead of this, they seemed and expressed themselves as satisfied with the sale at the price bid, until they learned, on the following day, of the contract between the receiver and the Grant Locomotive Works.

But if it be admitted that, from the interview of December 17, they had a right to expect a bidder on behalf of the receiver, to the amount of more than $760,000, how can it be said that they were misled, to their prejudice, by the fact that George M. Bogue afterwards contracted to and did bid in the property for the Grant Locomotive Works? . Under the contract of December 20, Bogue & Hoyt, on behalf of the locomotive works, were bound, if necessary, to bid the property up to the very amount which they say they understood the receiver would bid. What difference could it make to them whether Bogue was bidding on behalf of the receiver or for the Grant Locomotive Works?

But is there anything in the written agreement of December 20, when viewed in the light of the attendant facts, of a fraudulent character? Peters undoubtedly had the right to use any lawful means to induce a bidder to appear at the sale and bid, in his interest. To deny him that right would be to take away from him the fruits of his successful litigation. The evidence clearly shows that the objectors understood that the sale depended upon the success of his efforts, or those of his agents, to find such a bidder. He clearly had the right to use his claim as best he could to induce a purchaser to thus bid.

Suppose he had agreed to take $50,000 for it, or to give time on it to a purchaser, or to sell it on any other terms favorable to a purchaser, and thereby secured a bidder. Would any one say that by so doing, he practiced a fraud upon other parties interested in said premises?

On the part of the Grant Locomotive Works, (the real purchasers of the claim and bidders at the sale,) the contract of December 20, amounted only to an agreement on their part to become a bidder at the sale, and to bid at least the required $600,000, and after that to take chances against all other bidders, and to run the property up to $760,912.26, if compelled to do so by competing bidders, and if it became the purchaser of the property, to take the receiver's claim at its face value. We are unable to perceive wherein such a contract tended in any way to prejudice the rights of other parties interested in the land.

But objectors say that the arrangement was secret, and designedly kept from their knowledge. It can scarcely be contended that it is the duty of a prospective bidder at a public sale, to publish his intended bid. If the terms of said contract had been made public, the representatives of the Robinson estate and the agents of Mrs. Green, who were all present at the sale, would undoubtedly have been enabled to compel the locomotive works to pay something over $760,000 for the property, or forfeit its contract with the receiver. Such publication would doubtless have been greatly to their advantage, but it by no means follows that keeping the contract secret was a fraud upon them. It was no more a fraud than is the concealment by any bidder of the ultimate sum he will be disposed to bid, in case the property is run up by competing bidders. It is difficult to see how a public sale between competing bidders could ever be sustained, if one interested in the property sold, may insist that he was taken by surprise, and prejudiced because he had not been informed of the amount to which bidders would run the property.

40—134 ILL.

It is again urged with much earnestness, that the arrangement between the purchaser at said sale and the receiver was calculated to prevent competition in the bidding; and was therefore fraudulent. It is insisted that the evidence shows that the receiver himself, or some one in his interest, intended to bid at the sale as objectors were given to understand, on the 17th of December, and that the contract of the 20th had the effect to take him out of the list of bidders. Also that Bogue & Hoyt, who were previously engaged in trying to find a purchaser for the property, were, by that arrangement, induced to make no further efforts in that direction. In our view of the law, if the facts be conceded as they are claimed by the objectors to exist, still they establish no such fraudulent conduct in stifling bidding or preventing competition as would invalidate this sale.

Suppose it be admitted that the receiver had the ability, and had intended, if it became necessary, to bid in said property at the $600,000, or to run it up to the full amount of his claim, and had so informed objectors. Would that in law have deprived him of the right to afterwards induce a third person to become the purchaser in his stead? Could it be said under such circumstances, that a contract by him with such third party to induce him to bid, in any way tended to prevent others from bidding? In this case it is clear that the receiver could not purchase the property, for want of legal ability as receiver, and for want of financial ability as an individual, and all parties understood that a sale of it by the master depended upon the efforts of his agents Bogue & Hoyt to find some one who would purchase it. Suppose it be admitted that on the 17th of December, Bogue & Hoyt had in mind some one who would, if necessary, become a purchaser, and that objectors were at that time so informed, might they not afterwards legally contract with the locomotive works to become the purchaser if they could do so on terms more favorable to their client? It must be borne in mind that there is an entire absence of proof in

this record tending to show that there was any agreement whatever that the receiver or any one else should not bid at said sale. On the contrary, all that the receiver or his agents did was in the direction of procuring a purchaser for the property on the terms required by the decree, and if possible secure the payment of the bank claim in full. As to the contention that the contract with the locomotive works had the effect to induce him and his agents to cease their efforts to find other bidders, it need only be said, that having accomplished their object, no one had a right to expect further efforts from them.

The position contended for by plaintiffs in error amounts to saying that the success of the efforts of the receiver or his agents in finding a satisfactory bidder, should work its own defeat.

There is however nothing in the evidence as to what was said by the solicitor of the receiver, or Bogue & Hoyt, prior to December 20 inconsistent with the theory that their statements to the effect that the receiver would have a bidder at the sale, were made on the faith of negotiations then pending with the Grant Locomotive Works, which were consummated by the contract of December 20. Nor is there anything in either of the affidavits filed in the court below, unless it be in that of Willard T. Block, from which the slightest inference can be drawn, that the receiver or those acting for him, had at any time the remotest prospect of finding a bidder except in the locomotive works. Hamilton B. Bogue and George M. Bogue both swear that no arrangements had been concluded for a bidder until the 19th of December, and the latter says in his affidavit, that it was only because he felt assured that such arrangements would be consummated, that he authorized George W. Smith to make the statement which he did make on the 17th of December. The affidavit of Block shows that George M. Bogue had been endeavoring to induce parties who would be connected with the locomotive works to become purchasers of section 21, and while he says that Bogue informed

him in the interview of the 20th of December that he (Bogue) would have a purchaser at the sale, unless outbid, yet we do not regard that statement, when considered in the connection in which it was made, as indicating more than that he was making efforts to obtain a bidder and expected to succeed.

After a careful consideration of all the facts proved in this case, we are convinced that the efforts of the receiver and his agents, instead of tending to prevent bidding, or to destroy competition at the sale, were calculated to and did in fact produce a purchaser. While the decree was in favor of the receiver, it imposed a heavy burden upon him, in providing that his bill should be dismissed unless the property sold for $600,000 in cash. We have no doubt that it was through the efforts of Bogue & Hoyt on his behalf that a purchaser was obtained, nor is there room for serious doubt that, but for the contract with the Grant Locomotive Works, no responsible bidder for so large a sum would have appeared at the sale.

The point that the property sold at a grossly inadequate price is not seriously insisted upon, and could not well be under the proof. The sale was extensively advertised, a large number of responsible real estate dealers were present, the land was offered in subdivisions most likely to invite bidders. There is no proof found in the record from which it can be inferred that at another sale a greater sum could be realized. In fact, there is an absence of proof showing that it would again sell for even $600,000.

While courts should carefully guard judicial sales, against all attempts to depreciate the value of the property sold, or to prevent full and fair competition, due regard must also be had to the policy of the law to give stability to such sales. No sufficient reason is shown in this case for disturbing the sale reported by the master, and the order of the Circuit Court confirming said sale was proper.

It is assigned for error that the court below overruled the motion of objectors for leave to place George M. Bogue and

Willard T. Block on the witness stand and examine them orally. There was in this no departure from the usual practice in such cases. Objectors wholly failed to show that a full and fair presentation of their case could not be made in that way. But it does not appear that the objectors were in any degree prejudiced by the ruling of the court in that behalf. No attempt whatever was made to show what they expected to prove by Block in the proposed oral examination. As to said Bogue, Mr. Paddock, one of the solicitors for the objectors, in his affidavit, states as follows: "Affiant expects to prove by said Bogue, if he should be required to testify in this case, that said Bogue, prior to the date of said contract of December 20, was, to the knowledge of complainant, acting as the agent and under the direction of the parties mentioned in said letter of request, or some of them, who furnished the said Bogue the money mentioned in the said agreement of December 20, to be expended by the said Bogue in the purchase of the said land, and affiant knows of no other witness than the said Bogue by whom such facts can be adequately and fully established."

We are unable to see how such facts were material, and especially how they would, if established, have tended to sustain the objections.

Some other objections to the decree of confirmation are urged by the plaintiffs in error which we do not deem it necessary to notice further than to say, that we have examined them with care, and have reached the conclusion that none of them are well taken. The decree of the Circuit Court will be affirmed.

*Decree affirmed.*