NELLIE JANE LEONARD ABBOTT *et al.*

*v.*

FRANK R. BEEBE.

*Opinion filed April 18, 1907.*

1. JUDICIAL SALES—*chancellor's discretion as to approving master's sale is not arbitrary.* The chancellor has a broad discretion in the matter of approving or· disapproving sales made by the master in chancery; yet this discretion is not an arbitrary one, but must be exercised in accordance with established principles of law.

2. SAME—*a court will not refuse to confirm sale to protect party against his own negligence.* A court will not refuse to confirm a judicial sale and order a re-sale, on motion of an interested party, merely to protect him against the result of his own negligence, where he was under no disability to protect his rights at the sale.

3. SAME—*when court should refuse to order re-sale.* The court should not disapprove a partition sale by the master, made in accordance with the terms of the decree and without fraud or misconduct, merely to allow a re-sale at a guaranteed advance bid, where none of the numerous heirs were under disability save one, whose rights, to the extent of her share of the proposed advance bid, were protected by the purchaser, who tendered that amount in open court before the court had acted on the exceptions to the master's report of the sale.

APPEAL from the Circuit Court of Kankakee county; the Hon. ALBERT O. MARSHALL, Judge, presiding.

This case arises out of a partition proceeding brought in the circuit court of Kankakee county. J. Frank Leonard died intestate seized of certain city and farm property, which

descended to his heirs-at-law, who were his first cousins, to the number of eighteen. All of these were adults and all but one were of sound mind and free from disability to convey land, the one exception being Jane O. Smith, who is alleged to be of unsound mind. Partition proceedings were instituted, under which a decree of partition was entered and commissioners appointed, who reported that the land was not susceptible of division without manifest prejudice to the parties in interest. They appraised the city property at $4000 and the farm lands at $7200. The court thereupon entered a decree of sale May 31, 1906. After publication of notice once a week for four successive weeks by the master in chancery, and posting, a sale was held under his direction on August 2, 1906. The city property was sold to appellant E. C. Hamilton for $3550 and the farm property to appellant Addie A. Sawyer for $5100. Exceptions were filed to the master's report of sale by various heirs, including Jane O. Smith, the cousin alleged to be of unsound mind. She appeared by guardian *ad litem*. At the same time guaranties were presented to the court to the effect that upon re-sale of the premises the respective signers would bid on the city property at least $4000 and on the farm property at least $6000. Before these exceptions were heard by the court, appellant E. C. Hamilton tendered in open court $25 as one-eighteenth of the difference between the price bid by him at the sale and the price guaranteed upon a re-sale, and appellant Addie A. Sawyer in like manner tendered $50 for the one-eighteenth of such difference as to the premises purchased by her at the master's sale, these amounts being tendered in favor of Jane O. Smith, the heir alleged to be of unsound mind. On the hearing it was shown that the master in chancery had sold the property at the door of the court house in Kankakee county, as the decree and notices provided, and that there were several prospective purchasers present and several bids made for each piece before it was finally struck off; that during the time he was crying the

sale the master in chancery, at the request of the representa-
tives of certain of the heirs, delayed the sale to see if these
representatives could not procure higher bids; that the sale
was kept open an hour or more; that the premises in ques-
tion were finally struck off to the highest respective bidders,
and there was no request from anyone to further delay the
sale.

The trial court ordered the person who offered the guar-
anty on the city property to deposit, in addition to such
guaranty, $500 in cash as earnest money, and the person
who offered the guaranty on the farm property to deposit,
in addition, $1000 dollars in cash as earnest money, which
was done in both instances, whereupon the court sustained
the exceptions to the master's report, set aside the sale and
ordered a re-sale of the premises. From this order an ap-
peal is taken to this court.

J. BERT MILLER, C. B. SAWYER, WHEELER & WHEELER,
and BERT L. COOPER, for appellants.

W. R. HUNTER, SAVARY & RUEL, and C. M. CLAY BUN-
TAIN, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

No fraud or misconduct on the part of the purchasers
or the officer conducting the sale, or any other person con-
nected therewith, is charged in these proceedings and no
contention is made as to the illegality or insufficiency of any
of the proceedings prior to the sale, the whole difficulty aris-
ing upon the alleged inadequacy of the amounts bid and the
fact that a person who is claimed to be of unsound mind has
an interest in the property. If Jane O. Smith were of sound
mind, the same as the other seventeen heirs who are inter-
ested in the lands involved, under the authorities the report
of the sale should have been approved. Inadequacy of price
is not, in itself, sufficient to set aside a sale unless it is so

grossly inadequate as to establish fraud. (*Heberer* v. *Heberer*, 67 Ill. 253; *Quick* v. *Collins*, 197 id. 391.) These heirs were all duly made parties to the partition proceedings and had ample notice of the sale. Courts will not refuse to confirm a judicial sale or order a re-sale on the motion of an interested party, merely to protect him against the result of his own negligence, where he is under no disability to protect his own rights at such sale. (*Barling* v. *Peters*, 134 Ill. 606; *Quigley* v. *Breckenridge*, 180 id. 627.) "Public policy requires stability in all judicial sales and that they should not be disturbed for slight causes. To do so would impair that confidence so essentially necessary to induce persons to become purchasers when real estate is offered for sale under a judgment or decree of a court." (*Conover* v. *Musgrave*, 68 Ill. 58.) It is true in this case that the price bid for each piece was considerably less than the value fixed by the appraisers and less than the guaranty made to the court as to the price that would be paid if the lands were re-sold. Real estate rarely brings "its full value at a forced sale for cash in hand." *Allen* v. *Shepard*, 87 Ill. 314.

Should these seventeen co-tenants who were not under disability be allowed whatever benefit might accrue to them from a re-sale, to which they would not otherwise be entitled, merely from the fact that they had been joined in a partition proceeding with a person who is alleged to be of unsound mind? It has always been recognized by this court that it is the primary and insistent duty of all courts to guard with great care the interests of minors, insane and distracted persons and others under similar disabilities. Where the interests of such persons have been involved and the refusal to set aside a sale and order another sale would result in substantial and irreparable loss to them, it has been held that it was appropriate to order a re-sale of land. (*Jennings* v. *Dunphy*, 174 Ill. 86; *Kiebel* v. *Leick*, 216 id. 474; *Compton* v. *McCaffree*, 220 id. 137.) Nothing appears in the record to justify the conclusion that the property would

sell for more than the amount of the guaranty filed with
the trial court.   Even if the premises were sold at a greater
price than the amount guaranteed, it does not appear that
any substantial gain would result to the alleged incompetent
person, in view of the fact that a re-sale would cause ad-
ditional costs.   The increased amount that the person of
unsound mind would derive from a re-sale at the prices
guaranteed was deposited with the court by the first pur-
chasers before the trial judge had set aside the original sale,
and therefore in apt time.   In *Compton* v. *McCaffree, supra,*
we held that the offer to pay the money into court after the
sale had been set aside and appeal allowed was too late, but
such is not the situation here.   The interests of the alleged
incompetent person being fully protected, the court was not
justified in setting aside the sale and ordering a re-sale for
the benefit of the remaining co-tenants who were under no
disability.   They were able to bid for themselves or have
others do so, and thus protect their rights and obtain the
full value of their interests in the premises sold.   (*Kiebel* v.
*Leick, supra.*)   The chancellor has a broad discretion in ap-
proving or disapproving sales made by the master in chan-
cery, yet this discretion is not an arbitrary one, but must be
exercised in accordance with established principles of law.
(*Wilson* v. *Ford,* 190 Ill. 614.)   The rights of the alleged
incompetent person having been fully protected, we are of
the opinion upon this record that the court below should
have allowed the sale to stand.

The decree of the circuit court is therefore reversed and
the cause remanded to that court for further proceedings in
accordance with the views herein expressed.

*Reversed and remanded.*