THIRD DIVISION
 March 12, 1997








No. 1-95-2225

FLEET MORTGAGE CORP., f/k/a ) Appeal from the Circuit 
MORTGAGE ASSOCIATES, INC., ) Court of Cook County.
 )
 Plaintiff-Appellee, )
 )
 v. ) 
 ) 
JAMES W. DEALE, ANNIE M. DEALE, )
UNKNOWN OWNERS and NON-RECORD ) 
CLAIMANTS, )
 ) Honorable 
 Defendant, ) John N. Hourihane,
 ) Judge Presiding.
 and )
 )
REM PROPERTIES, INC., )
 )
 Intervenor-Appellant. )


 JUSTICE GORDON delivered the opinion of the court:

 This is an appeal from a trial court order vacating the
mortgage foreclosure sale of certain property to intervenor-
appellant REM Properties, Inc. (REM). The facts are undisputed. 
Plaintiff-appellee Fleet Mortgage Corporation, the mortgagee, filed
a complaint seeking to foreclose a mortgage executed by defendants
James and Annie Deale, the mortgagors, alleging that the Deales
defaulted on their mortgage installment payments. On November 17,
1994, the trial court entered a judgment of foreclosure by default
against the Deales. That order expressly provided that the right
of the Deales to redeem the judgment amount would expire on March
27, 1995. A mortgage foreclosure sale was then scheduled for March
28, 1995.
 On March 24, 1995, prior to the foreclosure sale, the Deales
sold the subject property for the sum of $35,000 to third-party
purchasers William Mable, Jr., and Emma Lee Cashaw. On March 27,
1995, on the last day of the redemption period, the Deales tendered
to Fleet the total amount of the mortgage foreclosure judgment,
which Fleet accepted in full payment. No prior notice of the
Deales' intention to redeem was served upon the mortgagee as
required by statute. See section 15-1603(e) of the Illinois
Mortgage Foreclosure Law (the Act), 735 ILCS 5/15-1101 et seq.
(West 1994) (set forth and discussed more fully below).
 Notwithstanding its acceptance of the redemption payment from
the mortgagors, Fleet failed to cancel the mortgage foreclosure
sale scheduled for the next day. As a result, the foreclosure sale
proceeded as scheduled on March 28, 1995. At that sale, Fleet bid
the outstanding balance on the mortgage owed by the Deales,
$18,993.90, an amount including statutory fees and costs. 
Intervenor-appellant REM Properties bid one dollar more,
$18,994.90, and was declared the highest bidder. REM accordingly
tendered its payment for the property and received a Receipt of
Sale and a Certificate of Sale verifying its purchase. On April
20, 1995, Fleet filed a motion to vacate the foreclosure sale to
REM, and in opposition, REM filed a petition to intervene and to
confirm that sale pursuant to section 5/1508(b) of the Mortgage
Foreclosure Law. 735 ILCS 5/1508(b) (West 1994) (set forth and
discussed below).
 Thereafter, on May 24, 1995, the trial court sustained Fleet's
motion to vacate the foreclosure sale and, while granting REM leave
to intervene, denied REM's petition to confirm the sale, stating as
follows:
 "Here it would be unfair and inequitable to let the sale
 stand. Although the Defendants did not properly notify
 the parties of their redemption, they did tender the
 funds to the Plaintiff, which were accepted on the last
 day of redemption. As such, it should be noted that
 equity abhors a forfeiture. We would be allowing the
 technicality by virtue of the failure to comply with the
 strict rules of redemption to bar these parties from
 their rightful interest in this property. Therefore, the
 sale should be vacated and the motion to confirm the sale
 will be denied."
REM now appeals from that order. For the reasons which follow, we
affirm.
DISCUSSION:
 The pertinent provisions of the Illinois Mortgage Foreclosure
Law are as follows. With respect to the notice required of the
Deales to be given to Fleet, the Act provides as follows:
 5/15-1603. Redemption
 "(e) Notice of Intent to Redeem. An owner of redemption
 who intends to redeem shall give written notice of such
 intent to redeem to the mortgagee's attorney of record
 specifying the date designated for redemption and the
 current address of the owner of redemption for purposes
 of receiving notice. Such owner of redemption shall file
 with the clerk of the court a certification of the giving
 of such notice. The notice of intent to redeem must be
 received by the mortgagee's attorney at least 15 days ***
 prior to the date designated for redemption." 735 ILCS
 5/15-1603(e) (West 1994).
 With respect to the judicial confirmation of a mortgage
foreclosure sale by the trial court, the Act provides as follows:
 5/15-1508. Report of sale and confirmation of sale
 "(b) Hearing. Upon motion and notice in accordance with
 court rules applicable to motions generally, which motion
 shall not be made prior to sale, the court shall conduct
 a hearing to confirm the sale. Unless the court finds
 that (i) a notice required in accordance with subsection
 (c) of Section 15-1507 was not given, (ii) the terms of
 sale were unconscionable, (iii) the sale was conducted
 fraudulently or (iv) that justice was otherwise not done,
 the court shall then enter an order confirming the sale." 
 735 ILCS 15/5-1508(b) (West 1994).
 A judicial foreclosure sale is not complete until it has
been approved by the trial court. Citicorp Savings v. First
Chicago Trust Co., 269 Ill. App. 3d 293, 645 N.E.2d 1038 (1995). 
The highest bid at a judicial sale is merely an irrevocable offer
to buy the subject property, the acceptance of which does not
take place until the court confirms the sale, before which there
is no true sale in any legal sense. Citicorp, 269 Ill. App. 3d
293, 645 N.E.2d 1038. Moreover, a court is justified in
disapproving a judicially mandated foreclosure sale if unfairness
is shown which is prejudicial to an interested party. See 735
ILCS 5/15-1508(b) (West 1994); Citicorp, 269 Ill. App. 3d 293,
645 N.E.2d 1038. Trial courts have broad discretion in approving
or disapproving sales made at their direction. See generally
Blancett v. Taylor, 6 Ill. 2d 434, 128 N.E.2d 916 (1955);
Citicorp, 269 Ill. App. 3d 293, 645 N.E.2d 1038; In re Rosewell,
236 Ill. App. 3d 473, 603 N.E.2d 753 (1992).
 On appeal, REM contends that the trial court abused its
discretion provided by section 5/15-1508(b) of the Act when it
determined that justice would not be done if it were to confirm
the foreclosure sale. In support, REM argues that if there was
any injustice, it was done to REM, who innocently bid and paid
for the subject property solely because of the negligence of the
Deales and of Fleet in failing to take steps to cancel the
foreclosure sale. We disagree.
 The case of Citicorp Savings v. First Chicago Trust Co., 269
Ill. App. 3d 293, 645 N.E.2d 1038 (1995) is squarely in point. 
In Citicorp, pursuant to the mortgagor's failure to make an
installment payment, the trial court entered a judgment of
foreclosure and sale. Thereafter, the mortgagor's statutory
right to pay the late installment and to thereby reinstate the
mortgage expired. Nevertheless, the mortgagee informed the
mortgagor that reinstatement would be permitted on an agreed upon
date, and that any mortgage foreclosure sale would be postponed
until after that date. However, prior to that rescheduled, later
date, the mortgagee mistakenly proceeded with a foreclosure sale
of the subject property to a third party. The trial court
refused to confirm the sale because the mortgagee had promised
the mortgagor that no foreclosure sale would take place prior to
the agreed upon date. Although the trial court denied the
petition of the third-party bidders to formally intervene, it
ordered the mortgagee to return their foreclosure sale payment to
them. The third-party bidders appealed, contending that they
should have been given leave to intervene and that the
foreclosure sale should have been confirmed.
 On appeal, the Citicorp court held that the appellant should
have been given leave to intervene, but nonetheless affirmed the
refusal of the trial court to confirm the foreclosure sale. In
so holding, the court stated that the third party's bid at the
foreclosure sale prior to the confirmation thereof was merely an
irrevocable offer which need not be confirmed if unfairness would
result. The court concluded that
 "it would not be in the interests of justice for the
 court to have confirmed the sale of the property after
 Citicorp [the mortgagee] affirmatively represented to
 the Fronteras [the mortgagors] that a sale would not
 take place." Citicorp, 269 Ill. App. 3d at 300-01, 645
 N.E.2d 1045.
 As in Citicorp, here, Fleet represented to the Deales that
no foreclosure sale would take place by virtue of its acceptance
of their full redemption payment within the redemption period and
prior to the date on which the foreclosure sale was scheduled. 
Moreover, unlike the facts in Citicorp where a mere promise by
the mortgagee to accept a late mortgage payment sufficed as
grounds to refuse to confirm the judicial sale, here, the
mortgagee actually accepted full payment during the redemption
period prior to any foreclosure sale. Thus, the holding in
Citicorp applies all the more strongly to the facts in this case.
 Contrary to the contentions of REM (the third-party bidder
at the foreclosure sale in this cause) this result does not
conflict with the policy behind the Illinois Mortgage Foreclosure
Law. We recognize and acknowledge the need to promote stability
in the conduct of a judicial sale. See Abbott v. Beebe, 226 Ill.
417, 420, 80 N.E. 991, 992 (1907), quoting Conover v. Musgrave,
68 Ill. 58 (1873) ("'Public policy requires stability in all
judicial sales and that they should not be disturbed for slight
causes. To do so would impair that confidence so essentially
necessary to induce persons to become purchasers when real estate
is offered for sale under a judgment or decree of a court.'"). 
However, that policy cannot be given ascendancy over the
articulated purpose of the Illinois Mortgage Foreclosure Law to
protect the equity of a mortgagor by permitting mortgage
redemptions prior to forced sales and thereby to protect against
the forced sale of property at prices well below fair market
value. See 84th Ill. Gen Assem., House Proceedings, June 26,
1986, at 60-61 (Representative Greiman stating that one purpose
of the Illinois Mortgage Foreclosure Law is to preserve the
equity of borrowers in their real estate purchases). See also
Wayne Bender & Steven Lindberg, The Illinois Mortgage Foreclosure
Law, 76 Ill. B.J. 800 (1987) (stating that one of the purposes of
the Act is to protect a borrower's equity from sales costs after
judgment to enable a redemption); Eric T. Freyfogle, The New
Judicial Roles in Illinois Mortgage Foreclosures, 19 Loy. U. Chi.
L.J. 933 (1988); Catherine A. Gnatek, The New Mortgage
Foreclosure Law: Redemption and Reinstatement, 1989 U. Ill. L.
Rev. 471, 491 (stating that the role of courts was expanded under
the Act in order to, among other things, protect mortgagors from
inequitable foreclosure sale prices); Jeffrey G. Liss,
Introduction to the Proposed Illinois Mortgage Foreclosure Act, 9
The Illinois Fund Concept of the Attorneys' Title Guarantee Fund
13, 14 (1985) (stating that purpose of the redemption provisions
of 1987 Illinois Mortgage Foreclosure Law is to put the real
estate back on the market as quickly as possible, but only after
it is clear that the mortgagor cannot redeem).
 Here, the trial court did not refuse to confirm the
foreclosure sale because of a belated attempt to redeem after the
occurrence of a sale and after the period of redemption had
expired. Rather, here, the redemption took place with the
concurrence of the mortgagee, before the foreclosure sale was
conducted and before the period of redemption had expired. The
mortgagee here merely neglected to make adequate provisions to
cancel the subsequently scheduled judicial sale. Consequently,
we find no fault with the trial court's exercise of its
discretion to disaffirm the sale, thereby giving ascendancy to
the protection of the mortgagors' right to redeem his property
under the statute over that of the bidder at an erroneously
conducted judicial sale. In that regard, while not of itself
dispositive, we note that the relative prejudice to the bidder at
the judicial sale from the cancellation of its advantageous bid
on the subject property at one dollar over the mortgage balance
of $18,993.90 is more than countervailed by the prejudice which
would ensue to the mortgagors if the foreclosure sale were to
have been confirmed. Such confirmation would have effectively
nullified the mortgagors' mortgage redemption and their
preceeding commercial sale of the property for $35,000, almost
twice the amount of the highest bid at the judicial sale.
 REM relies on the decisions of Resolution Trust Corporation
v. Holtzman, 248 Ill. App. 3d 105, 618 N.E.2d 418 (1993); Uptown
Federal Savings & Loan Ass'n v. Vasavid, 94 Ill. App. 3d 531, 418
N.E.2d 831 (1981); and Uptown Federal Savings & Loan Ass'n v.
Walsh, 15 Ill. App. 3d 626, 305 N.E.2d 74 (1973), in support of
its contention that the vacatur of the foreclosure sale
contravenes the public policy of lending stability and permanency
to judicial sales. However, those cases are not in point. In
Holtzman, the trial court failed to conduct an evidentiary
hearing to determine whether justice was done in a judicial sale
where the sale price was alleged to have been unconscionably low
in view of appraisals done prior thereto. In Vasavid, the court
affirmed the confirmation of a foreclosure sale where the party
wishing to vacate that sale did nothing despite its knowledge
prior to the sale that a foreclosure sale was imminent and
despite its actual presence at that sale. In Walsh, the court
affirmed the confirmation of a foreclosure sale where the only
contention on appeal was an unsupported claim that the purchase
price was too low and no allegations of unfairness were made. 
Unlike the facts in those cases, here, the focus is not on the
sufficiency of the bidding which took place at the judicial sale,
but, rather, upon the undisputed fact that the Deales completed
their redemption by agreement with the mortgagee before the sale
took place. Moreover, unlike the facts in REM's cases, here the
trial court indeed conducted a hearing to consider the
conflicting equities involved before making its ruling, and
consequently there is specific support for Fleet's contention
that unfairness would result to the Deales if the foreclosure
sale were to be confirmed.
 REM further contends that the Deales' strict compliance with
the notice requirements of section 15-1603(e) of the Act was
required, and that the trial court had no authority to ignore or
judicially amend those statutory requirements by vacating the
foreclosure sale. This contention is wholly lacking in merit. 
The beneficiary of the notice requirements of section 15-1603(e)
would appear to be the mortgagee, to whom notice of any intent to
redeem is required. See 735 ILCS 5/15-1603(e) (West 1994). In
any event, the Act does not preclude the mortgagee from waiving
compliance with those requirements as Fleet did here when it
accepted the Deale's redemption payment despite the lack of
notice. See Citicorp, 269 Ill. App. 3d 293, 645 N.E.2d 1038
(where mortgagee agreed to permit mortgagor to reinstate beyond
the expiration of the statutory time period during which
reinstatement was permissible).
 REM relies on the decisions of First Federal Savings & Loan
Ass'n v. Walker, 91 Ill. 2d 218, 437 N.E.2d 644 (1982) and
Evergreen Savings & Loan Ass'n v. Barnard, 65 Ill. App. 3d 492,
382 N.E.2d 467 (1978) in support of its contention that the trial
court may not ignore the Deales' failure to satisfy the notice
requirements of section 5/15-1603(e) of the Act. However, those
cases are fully consistent with our holding in this case. In
Walker and in Barnard, the courts stated, inter alia, that only
mortgagees are permitted under the Act to allow borrowers to make
payments on their mortgages where the statutory right to do so
has expired, and that the trial court itself cannot attempt to
dispense with the timeliness requirement without the approval of
the mortgagee. Unlike those cases, here, Fleet voluntarily
waived the notice requirement and permitted the Deales to redeem
their mortgage despite the absence of notice, and the trial court
cannot be said to have independently excused the Deales from
satisfying that requirement.
 REM also contends that Fleet has no standing to assert any
potential injustice to the Deales which would result if the
foreclosure sale were to be confirmed in favor of REM. We
disagree. As noted, section 5/15-1508(b) of the Act expressly
provides that the trial court may refuse to confirm a foreclosure
sale where "justice was otherwise not done." 735 ILCS 5/15-
1508(b) (West 1994). Hence, the trial court is expressly
required to consider the interests of all parties before ruling
on a petition to confirm a foreclosure sale. As noted by the
court in Citicorp, a "court is justified in refusing to approve a
judicial sale if unfairness is shown which is prejudicial to an
interested party." Citicorp, 269 Ill. App. 3d at 300, 645 N.E.2d
1045. (Emphasis added.) In that case, as here, the party whose
interest was asserted by the mortgagee-appellee was not that of
the appellant, but, rather, was that of the mortgagor, who as
noted had been promised the right to make a reinstatement payment
and that no foreclosure sale would take place. Hence, Fleet's
standing to make the argument that it would be unfair to the
Deales if the foreclosure sale were to be confirmed is entirely
consistent with the role that such interests play in any
determination of whether to confirm a mortgage foreclosure sale.
 REM nevertheless contends that the trial court abused its
discretion in vacating the foreclosure sale because Fleet and the
Deales should not be excused from their own negligence in failing
to take steps to cancel the foreclosure sale. In support, REM
relies on the decisions of Abbott v. Beebe, 226 Ill. 417, 80 N.E.
991 (1907) and Grubert v. Cosmopolitan National Bank of Chicago,
269 Ill. App. 3d 408, 645 N.E.2d 560 (1995). However, those
cases are fully distinguishable. Abbott involved a partition
sale of a certain parcel of property which could not be fairly
divided among the group of individuals who had jointly inherited
that property from their deceased cousin. Although fully aware
that the property would be sold at a judicial sale, the heirs
made no effort to delay the sale or to otherwise facilitate an
increase in the prices which were bid. Thereafter, on motion of
the heirs, the trial court refused to confirm the sale by reason
of the low bids. The Abbott court disagreed, stating that a low
bid in and of itself would not suffice to defeat a judicial sale,
especially where the heirs had notice of the sale but did nothing
to prevent its outcome.
 However, Abbott did not involve a mortgage foreclosure, and
therefore did not invoke any issues regarding a mortgagor's
redemption rights. In Abbott, the parties did not dispute the
right to conduct a judicial sale, but, rather, simply challenged
the adequacy of the price offered by the successful bidder. In
contrast, here, we must confront the right of the mortgagors to
redeem their property prior to any judicial sale during the
redemption period, despite the fact that the mortgagee neglected
to thereafter cancel the scheduled judicial sale. As previously
pointed out, under these circumstances, the trial court was well
within the latitude of its discretion in refusing to confirm the
sale after balancing the conflicting equities involved.
 Although Grubert does involve a mortgage foreclosure, it is
nevertheless readily distinguishable as well. There, the
mortgagee foreclosed on a mortgage and then offered the highest
bid at the subsequent foreclosure sale. The trial court
confirmed that sale to the mortgagee, but sua sponte reduced the
mortgagee's bid on the grounds that the parties purportedly had
agreed on such a reduction to reflect rent and interest
obligations of the mortgagor relating to the property. The
Grubert court reversed, stating that the trial court should have
conducted a hearing to determine whether the reduction of the bid
reflected in its order accurately reflected the agreement of the
parties.
 In this case, as contrasted with Grubert, the trial court in
reaching its determination was required to balance the
mortgagors' right to redeem their mortgage against the competing
interest of the bidder at the judicial sale. In Grubert, there
were no such competing interests involved, in that no redemption
was attempted, and the sale was therefore properly conducted. 
Thus Grubert only involved a question of whether the trial court
had unilateral authority to modify a bid without first
establishing an agreement between the parties as to the propriety
of its reduction. Here, on the other hand, the trial court was
well within the latitude of its discretion to favor on balance
the right of the mortgagor to redeem its mortgage within the
period of redemption over the right of a bidder to retain the
benefits of a judicial sale which should never have gone forward
in the first instance but for the error of the mortgagee in
failing to cancel it. Therefore, neither Abbott nor Grubert
offer meaningful support to REM's contentions.
 For the foregoing reasons, the judgment of the Circuit Court
of Cook County is affirmed.
 COUSINS, Jr., P.J. and McNULTY, J., concur.