JOHN COYLE, Respondent, v. CHICAGO & ALTON RAILROAD COMPANY, Appellant.

**Kansas City Court of Appeals, November 7, 1887.**

1. JURISDICTION—WAIVER OF OBJECTION TO—EFFECT OF—CASE ADJUDGED.—Where the defendant alone raised a jurisdictional question in the court below, and who alone can take advantage thereof, expressly waives, by renunciation filed in this court, any such question, and concedes the constitutionality of the statute relied on by plaintiff to maintain this action, the plaintiff cannot complain. Nor can the jurisdiction of this court be ousted, because the appellant (defendant) might insist upon a construction of the constitution, but in fact does not.

2. RAILROADS—TRANSPORTATION OF CATTLE WITH INFECTIOUS DISEASE —CONSTRUCTION OF SECTION 4359, REVISED STATUTES.—The liability against railroads, etc., for violating the provisions of the statute (Rev. Stat. sect. 4358), prohibiting the bringing, or moving through, or from one part of the state to another, of diseased cattle, is not an unqualified one. But the liability is limited to the disease "communicated to any other animal or cattle in the neighborhood or along the line of such transportation or removal." (HALL, J., dissents).

3. ——— MEANING OF "LINE" OF RAILROAD, AND OF "NEIGHBORHOOD," AS USED IN THIS STATUTE.—The meaning of the "line" of the railroad, as used in this statute, is, its right of way, usually one hundred feet in width; and the expression, "along the line" of the road, means in a line with it—by the side of it—near to it. The meaning of the term, "neighborhood," is a place near—vicinity—adjoining district, etc.

APPEAL from Saline Circuit Court, HON. RICHARD FIELD, Judge.

*Reversed.*

The case and facts are stated in the opinion of the court.

G. B. MACFARLANE and BOYD & SEBREE, for the appellant.

I. Under a proper construction of the statute the

liability of the defendant should have been confined to damages on account of disease communicated along the line of its road and upon its own premises. Rev. Stat. sects. 4358, 4359 ; Laws 1881, page 40. Along the line of transportation is the only part of section 4359, as amended, applicable to railroad companies. The true rule for construction of statutes is, to look to the whole and every part of the statute, and the apparent intention derived from the whole, in the light of the law as it existed, the construction given to it by the courts, the subject-matter, the effects and consequences, and the reason and spirit of the law, and thus to ascertain the true meaning of the legislature. *Neenan v. Smith,* 50 Mo. 525 ; *Spettler v. Younge,* 63 Mo. 43 ; *State v. Diveling,* 66 Mo. 379 ; *Ryegate v. Wardsbrough,* 30 Vt. 746 ; *Brooks v. School Commissioner,* 31 Ala. 221 ; *Railroad v. Gregory,* 15 Ill. 20 ; *Torrence v. McDonald,* 12 Ga. 526 ; *Wilson v. Railroad,* 60 Mo. 195 ; *Railroad v. Husen,* 95 U. S. 465.

II.   The removal by Conway from defendant's yards to Coyle's pasture was an independent violation of the law, and was the direct and proximate cause of plaintiff's damages, and defendant was not liable therefor. *Surface v. Railroad,* 63 Mo. 453 ; *Wilson v. Railroad,* 60 Mo. 195; *Surface v. Railroad,* 60 Mo. 216.

III.   Plaintiff should have alleged and proved knowledge on the part of defendant that the calves it transported were at the time diseased Texas cattle. *McAlester v. Railroad,* 74 Mo. 358 ; *Bradford v. Floyd,* 80 Mo. 212.

IV.   By authorizing Conway to drive to and turn into his premises the diseased cattle, plaintiff became a party to the unlawful act, and has no right to recover damages from defendant resulting therefrom. *Howell v. Stewart,* 54 Mo. 404 ; *Norris v. Hatfield,* 71 Ill. 298 ; *Hall v. Corcoran,* 107 Mass. 251 ; *Saratoga Bank v.*

*King*, 44 N. Y. 87 ; *Burnham v. Strother*, 33 N. W. Rep. 410 ; *Worcester v. Bridge Company*, 7 Gray (Mass.) 459.

V. Plaintiff's negligence in allowing the Texas cattle to mix with his own, after he had seen them, and believed they were Texas cattle, directly contributed to produce the damage of which he complains, and should defeat his recovery. And the plaintiff's own uncontradicted evidence showing such negligence on his part, the trial court should have sustained the defendant's demurrer to the evidence. *Powell v. Railroad*, 76 Mo. 80 ; *Lenix v. Railroad*, 76 Mo. 68 ; *Smith v. Hardesty*, 31 Mo. 411 ; *Callahan v. Warne*, 40 Mo. 131.

VI. The petition fails to state facts sufficient to constitute a cause of action, in this, that it does not charge that the disease was "communicated" to plaintiff's cattle, "in the neighborhood, or along the line of" defendant's "transportation." This was a necessary allegation, and not having been made, the defendant's objection to the introduction of any evidence should have been sustained. *Pier v. Heinrichoffen*, 52 Mo. 333 ; *Scott v. Robards*, 67 Mo. 289. And the defect being fatal, it was not cured by the defendant pleading and going to trial, nor by the verdict. *Weil v. Greene County*, 69 Mo. 281 ; *State to use of Monks v. Bacon*, 24 Mo. App. 403 ; *Frazier v. Roberts*, 32 Mo. 457.

Yerby & Vance and D. D. Duggins, for the respondent.

I. This cause is improperly in this court, as it involves the construction of the constitution. Laws 1883, section 5, p. 216. (1) The Supreme Court never having construed the acts under which the suit is brought, the constitutional question is a debatable one, and properly belongs in Supreme Court. *Carroll v. Campbell*, 25 Mo. App. 630. (2) The cause being erroneously in this court jurisdiction cannot be given or obtained by consent. *Dodson, Adm'r, v. Scroggs*, 47 Mo. 285 ; *Britton v. Steber*, 62 Mo. 370. (3) The Supreme Court has exclusive juris-

diction of constitutional questions. Laws 1885, section 5, p. 216. (4) Want of jurisdiction over the subject-matter can be taken advantage of at any time. *Graves v. McHugh*, 58 Mo. 499; *Henderson v. Henderson*, 55 Mo. 534.

II. The petition follows substantially the language of the statute. Rev. Stat., sect. 4358, as amended by Laws of 1881, p. 40.

III. The court properly construed the law, and followed the language of the statute in its instructions to the jury. *Wilson v. Railroad*, 60 Mo. 184.

IV. It was not necessary, under the statute, to allege in the petition, nor to prove at the trial, that defendant had knowledge that the cattle were Texas cattle, or were affected with a contagious disease. *Wilson v. Railroad, supra.*

V. The question of plaintiff's negligence was submitted to the jury upon all the evidence on both sides, under proper instructions of the court, and its verdict is conclusive; and the appellate court will not interfere with the finding of the jury. *Brown v. Railroad*, 50 Mo. 461; *Owens v. Railroad*, 58 Mo. 386.

VI. The cattle were not removed by Conway out of the county, and such removal did not constitute a new and independent offence. *Wilson v. Railroad*, 60 Mo. 184; *Surface v. Railroad*, 63 Mo. 452.

PHILIPS, P. J.—This is an action against the defendant railroad company to recover damages, consequent upon the transportation of cattle over defendant's railroad, from Kansas City to the city of Marshall, in this state.

The petition alleges: "That, on or about the twenty-third day of July, 1886, while in the exercise of its rights as a common carrier, the defendant shipped, transported, and brought into the said county of Saline, in the state of Missouri aforesaid, eighty-three head of Texas cattle, calves, steers, and heifers, which the de-

fendant wrongfully unloaded, at its depot in the city of Marshall aforesaid, from its cars on which the same were transported and brought into the county of Saline aforesaid ; that said cattle, so unloaded and brought into the county aforesaid, by the defendant, were, on said twenty-third day of July, 1886, and for a long period of time prior thereto, and long thereafter, affected with a certain disease that is commonly called or known as Texas fever, and is a contagious disease ; that said cattle then communicated said disease to the native cattle of plaintiff, from which fifty-five head sickened and died, and twelve head became sick and diseased, and of no value, to the damage of plaintiff in the sum of six thousand dollars, for which plaintiff asks judgment."

The answer admitted the act of transportation, but denied any knowledge, etc., as to whether the said cattle were Texas cattle, or whether they were diseased, as alleged. The answer further pleaded contributory negligence, on the part of the plaintiff, in this : that he owned a farm some two miles from the town of Marshall, where defendant carried said cattle for one Conway, as the consignee, and that the said Conway took and drove the said cattle from the railroad station to plaintiff's farm, under a contract, made with plaintiff by said Conway, for pasturing the cattle ; that plaintiff so received them, knowing them to be Texas cattle, with such disease, and voluntarily herded them with his own cattle, whereby the disease, if any, was communicated to plaintiff's said cattle.

The plaintiff recovered judgment against defendant, to reverse which the defendant prosecutes this appeal.

I.   It is unnecessary to say more of the jurisdictional question, raised by the respondent here, than that the appellant, who alone raised such question below, and who alone can take advantage thereof, expressly waives, by renunciation filed herein, any such question, and concedes the constitutionality of the statute relied on by plaintiff to maintain this action.   A party may waive a

constitutional right.  *Merrill v. City of St. Louis*, 83 Mo. 245.  The respondent cannot complain that the appellant does not insist upon a point to the disadvantage of the respondent.  Nor can the jurisdiction of this court be ousted because the appellant might insist upon a construction of the constitution, but, in fact, does not.

II.  The sufficiency of the petition is assailed by defendant on the ground that it does not charge that the disease was communicated to plaintiff's cattle in the neighborhood, or along the line of, defendant's transportation.  The sections of the statute (Rev. Stat., 1879), applicable to this controversy are 4358 and 4359:

"Section 4358.  No person shall drive any diseased or distempered cattle, affected with what is commonly known as Texas or Spanish fever, or any other infectious disease, into or through this state, or from one place therein to another, unless it be to remove them from one piece of ground to another of the same owner's, and no railroad, or owners of a steamboat, or other company or persons, shall bring into or transport through this state, or from one part thereof to another, any Texas, Mexican, Cherokee, or Indian cattle afflicted with what is known as Texas or Spanish fever, or any other contagious disease, epidemic, or pestilence."

"Section 4359.  Any person or persons, railroad company, or owner or owners of any steamboat, who shall offend against or violate any of the provisions of the next preceding section, shall be liable for all damages sustained on account of such Texas or Spanish fever, or other infectious disease, being communicated from any such diseased animal or cattle to any other animal or cattle, in the neighborhood, or along the line of such transportation or removal of such diseased animal or cattle into or through this state, or from one part thereof to another; and the existence or presence of such Texas or Spanish fever, or other contagious or infectious disease, among the native cattle of this state, on the same

range with, or in the vicinity of, any such Texas, Mexican, Cherokee, or Indian cattle, or along the line or route over which they were removed or transported, shall be *prima facie* evidence that the same were affected with such disease at the time of being so removed or transported, and communicated it to such native cattle so affected therewith.''

It will be observed that, while the first part of section 4358 makes the prohibition as to railroad companies bringing in, or moving through, or from one part of the state to another, such cattle, it prescribes no liability. The liability is fixed by section 4359. A careful reading of this section makes it quite apparent that the liability is not an unqualified one for all damages that may result to any cattle, any and everywhere in the state, by reason of the violation of the inhibition contained in section 4358. But the liability is expressly limited to the disease communicated "to any other animal or cattle in the neighborhood, or along the line of such transportation or removal." This qualification becomes conspicuous and significant when considered in connection with the past legislation and adjudications touching the subject. In 1869 ( Laws Mo. 1869, 199 ), the legislature prohibited the driving, or bringing, of any such cattle into any county in the state between given months of the year, excepting such cattle as may have been kept the previous winter in the state ; and, further, allowing to the railroad companies the right to transport through the state, without unloading, such Texas cattle as may come across the line of the state, "but the railroad company, or owners of a steamboat performing such transportation, shall be responsible for all damages which may result from the disease called the Spanish or Texas fever, should the same occur along the line of such transportation." By the ninth section of said act it was declared that, "if any person or persons shall bring into this state any Texas, etc., cattle, in violation of the first section of this act, he or they shall be liable, in all cases, for all damages

sustained on account of disease communicated by such cattle." Under this act, the transportation companies were subject to a liability for damages in two instances; (1) for bringing into any county in this state such cattle during the prohibited period. For the violation of this portion of section one of the act, section nine imposed an unqualified liability "for all damages sustained on account of disease communicated by such cattle." (2) While the transportation company was permitted to carry such cattle, coming across the line, through the state, without unloading, yet it should be answerable for all damages consequent upon the communication of the disease to other cattle; but this liability was expressly limited to such communication of the disease as should occur " along the line of such transportation." It was under this statute that the case of *Wilson v. Railroad* (60 Mo. 184) was considered and decided. The culpable act of the defendant railroad company being the bringing of the cattle during the prohibited period into a county in this state, it was properly held liable for the resultant damages, regardless of the fact whether the disease was communicated on or off the line of transportation. It would, we presume, be hardly seriously contended by any lawyer that a petition, predicated of the act of a railroad company in carrying through the state cattle that came across the line, would be good under the law of 1869 without averring that the disease occurred "along the line of such transportation." This fact would be essential, and every such fact "is constitutive in the sense of the code, and must be proved." *Pier et al. v. Heinrichoffen et al.*, 52 Mo. 333 ; *Scott v. Robards*, 67 Mo. 289.

This statute was declared by the Supreme Court of the United States, in *Railroad v. Husen* (95 U. S. 465), to be unconstitutional, as being repugnant to so much of section 8, article 1, which provides that congress shall have power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes."

Then came the enactment of said sections 4358–4359 in the Revised Statutes of 1879. By this statute the liability was limited to the transportation of *diseased* cattle, so as to bring the act within the police power of the state. It is to be observed, as important, that while section 4359 of the act of 1879 follows the substance of section nine of the act of 1869, it adds the words, "being communicated from such diseased animal, or cattle, to any other animal or cattle in the neighborhood or along the line of such transportation."

The qualification is not restricted, as under the act of 1869, to the instance of the transportation of such cattle through the state as come across the line; but it applies to all of the enumerated instances "of the provisions of the next preceding section," *i. e.*, section 4358, including bringing into, or transporting through, the state, "or from one part thereof to another."

The fact, therefore, of the disease having been communicated in the neighborhood, or along the line of transportation, being constitutive of the cause of action, it was essential to aver and prove it. And for this omission of statement in the petition, the objection to the introduction of any evidence, and the demurrer to the evidence, should have been sustained.

III. There is no dispute as to the principal facts in this case. The cattle were calves, four or five months old. They had been brought direct from Texas to Kansas City, Missouri, over a line of railroad not connected with or under the management and control of defendant. At Kansas City the defendant received these cattle from Hunter, Evans & Company, commission merchants, for transportation to the city of Marshall, in Saline county, consigned to one Conway. The defendant accordingly carried the cattle to Marshall, where Conway took them from the stock-pens and drove them one mile and three-quarters to plaintiff's farm in the country, having previously made arrangements with plaintiff for keeping them as an agister. The plaintiff turned them into the

pasture, and afterwards mingled them with his own cattle. His own testimony tended to show that he supposed they were Texas cattle, but that probably they had been shipped from Southern Kansas. He knew the danger of so mingling Texas cattle with native cattle. In about two months after he so received said cattle the disease manifested itself among his native cattle, and loss ensued.

Two questions arise on this evidence, or rather two aspects of the same question : Was the disease thus communicated, "in the neighborhood or along the line of transportation?" And "can the transportation company be held liable for the resultant damages where another party, independent of the defendant, took possession of the cattle at defendant's pens, and drove them one mile and three quarters from the railroad to plaintiff's farm, where the disease was communicated?" Without stopping here to discuss the question, whether the term, "neighborhood," as employed in this statute, does not apply only to the act of "any person or persons" as distinguished from the transportation company, and the term, "along the line of such transportation," does not pertain solely to such company, it is sufficient to say, on the rule of *noscitur a sociis*, as applied to the act of the company, they mean about the same thing. They are to be understood in their ordinary acceptation. We understand what is meant by the "line" of the railroad. It is its right of way, usually one hundred feet in width. And when we say "along the line" of the road, we mean in a line with it, by the side of it, near to it. Webster defines neighborhood, in this connection, as, " 'A place near;' 'vicinity,' 'adjoining district'; syn., 'vicinity,' 'proximity.' Neighborhood is Anglo-Saxon, and vicinity is Latin. Hence, they differ in degree or strength. Vicinity does not denote so close a connection as neighborhood. A neighborhood is a more immediate vicinity. The houses immediately ad-

joining a square are in the neighborhood of that square; those which are somewhat further removed are in the vicinity of the square." Without any undue refinement, or in any degree, by judicial construction, too narrowly restricting the liability of the transportation companies under this statute, we cannot, without doing violence both to the letter and spirit of the law, make the defendant liable for damages occasioned in this case.

Under the act of 1869, which made the railroad company liable for bringing into any county in this state such cattle, between the prohibited periods, it was held that after the company had so brought the cattle into one county, from whence they were removed by some other person into another county, the company was not liable for the damage consequent upon the communication of the disease in the last county; although the removal may have been but a few yards over an arbitrary county line. This holding was predicated upon the fact of the second removal being "a new and distinct violation of the statute," for which the last actor alone was answerable. *Surface v. Railroad,* 60 Mo. 216; s. c., 63 Mo. 452. In the revision of 1879, the words, "into any county," as applied to railroads and steamboats, are omitted; and "any person or persons" and such transportation companies are made liable for removing such cattle from one part of the state to another. So, no matter whether the party crosses a county line or not in the act of removal, he becomes liable for the damages resulting from the act of removal from one point in the state to another. There can, therefore, be no question but that Conway, in removing the cattle in question from the depot at Marshall to plaintiff's farm, removed them from one part of the state to another, and he would be liable, if any party be, for the damage resulting therefrom; for he committed a new and distinct offence under the statute. On the principle of the decisions in *Surface v. Railroad* (*supra*), there is no

liability on the part of the defendant We are not required to consider the policy of the law as thus construed. We are here to declare the law as the legislature has made it. The suggestion that, by thus relieving the transportation companies, and shifting the responsibility on the party who so removes the cattle, the citizen who suffers by the communication of the disease may have no responsible party to look to for recompense, is the invocation of a vicious spirit in the law-maker. A statute that would thus look about for a responsible agent on whom to impose its penalties would be subject to the serious objection of discrimination among the citizens, and of visiting capital with burdens consequent upon the immediate wrongful act of another.

On the other hand, the conservatism and wisdom of the statute becomes apparent when it is considered that, on the one hand, the legislature, in striking at the evil of the spread of this disease among our native cattle, had to steer clear of an encroachment upon the province of the federal congress to regulate commerce between the states; and, on the other hand, to preserve, or have regard to, the just rights and duties of the railroad companies to the public. For the laws of the same statute require the railroad companies in this state to carry all live stock offered to them for transportation, and a failure to do so renders them liable for damages resulting therefrom. Rev. Stat., sect. 802. The state has provided no inspector to pass upon such diseased cattle. It is a latent disease, now generally understood not to be communicable except in actual contact with our native cattle, or by herding on the same range, or drinking from the same stream or pond of water. When such cattle are presented to the transportation companies for shipment, they must determine, at their peril, whether they are diseased or not, when scarcely any safe means of determining this fact in advance of the actual importation of the disease is known to the carrier.

The legislature, therefore, while being careful not to place any interdiction upon this traffic, went as far as common justice and fair dealing would warrant, by permitting the companies to transport, but holding them to a liability for the disease communicated along the line of travel; yet, not extending the liability to any loss that may occur in any part of the state, however remote the point from the line of removal by the company, or the distance in time, or the agency of a stranger. And, then, for the better protection of the citizen, the statute requires the private person, before he can remove the cattle from one point to another in the state, to execute bond, to be approved, on which any person injured by the act of removal may sue; and, as a further protection against the contingency of such removal being accomplished by an irresponsible party, the same statute makes the act a misdemeanor, when done without giving the required bond.

It follows that the judgment of the circuit court must be reversed. It is accordingly so ordered. Ellison, J., concurs. Hall, J., dissents.