## LUCY A. WILSON
### v.
## EDWARD F. FORD.

*Opinion filed June 19, 1901.*

1. JUDICIAL SALES—*the parties asking re-sale for advance bid should guarantee against loss.* In order to authorize the setting aside of a judicial sale upon the claim that the property will bring more on re-sale, the parties asking a re-sale should bring the money into court or offer to make an advance bid, or give a guaranty or bond that there will be no loss on re-sale.

2. SAME—*mere inadequacy of price is not ground for setting aside sale.* A re-sale on account of inadequacy of price will not be ordered unless it appears there has been fraud or misconduct in the purchaser or in the officer conducting the sale, or other person connected therewith, or unless a party interested has been surprised or led into mistake by the conduct of the purchaser, officer or other person connected with the sale.

3. SAME—*chancellor's discretion in approving sales is not arbitrary.* While the chancellor has a broad discretion in approving or disapproving masters' sales, yet such discretion is not arbitrary, but must be exercised in accordance with established principles of law.

4. SAME—*master derives his authority to sell from the decree alone.* A master in chancery derives his authority to make a sale from the decree of the court alone, and unless he pursues the directions of the decree his acts will be set aside.

5. SAME—*upon objection, an officer must prove giving of due notice.* Whenever objection is made in due form to the confirmation of a judicial sale upon the ground that proper notice was not given or posted by the officer, the latter will be required to prove that notice was given by him in accordance with the terms of the decree.

6. SAME—*when presumption that master performed his duty as to posting notices cannot prevail.* The presumption of law that the master performed his duty as to posting notices of sale cannot prevail over proof furnished by the master's affidavit that he did not himself put up the notices in the places selected by him but sent them by mail to strangers, there being no proof, beyond his mere assertion, that they were actually put up by such strangers.

7. EVIDENCE—*when affidavit of master is not prima facie evidence that notices of sale were received by mail.* An affidavit of a master in chancery to the effect that he "mailed copies of said sale notices" to certain post-masters and bankers is not *prima facie* evidence that such notices were received by the parties to whom they were sent, where the affidavit does not state that the notices were properly addressed and stamped.

APPEAL from the Circuit Court of Greene county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

This is a bill; filed on November 1, 1899, by the appellant, Lucy A. Wilson, against the appellee, Edward F. Ford and others (two of the defendants below being minors), for the partition of eighty acres of land in Greene county, Illinois. The adult defendants below were either defaulted, or consented to the entrance of a decree of partition. A guardian *ad litem* was appointed for the two minor defendants, and he filed an answer for them. The cause was referred to a master in chancery, who took testimony, and made a report recommending a decree for partition. On April 4, 1900, a decree for partition was entered, finding the respective interests owned by the various parties, and appointing commissioners to make partition. The commissioners reported that the property could not be divided without manifest prejudice to the parties in interest, and appraised the premises and fixed the value thereof at $4000.00.

On April 18, 1900, the court approved the report of the commissioners, and entered a decree of sale, providing that the premises be sold "for cash in hand at the southwest corner of the public square in Greenfield, Greene county, Illinois, at the main entrance from the public square to the bank of Sheffield & Co:, to the highest and best bidder, provided that said bid be equal to at least two-thirds of the value," etc. The decree of sale also contained the following: "Said master will first give public notice of such sale and of the time, place and terms thereof by publication in some newspaper printed and published in said Greene county, Illinois, for at least four weeks prior to such sale and by posting written or printed notice thereof in at least five of the most public places in the neighborhood in which said premises are situated."

On May 26, 1900, the master made his report of sale, therein reporting that he advertised "as in said decree ordered," as follows: "For five consecutive publications in the *Carrollton Gazette,* a newspaper printed and published in the county and State aforesaid, once in each week, and in addition thereto caused notices of said sale to be posted at the following points in said county, to-wit: The post-offices in Rockbridge, Wrightsville, and Athensville, the court house in Carrollton, the bank of Sheffield & Co., in Greenfield, and the People's Bank in Whitehall, and the bank of S. F. Greene & Co., in Kane, that he would, on the 19th day of May, A. D. 1900, at the front door of the banking house of Sheffield & Co., in Greenfield, county and State aforesaid, offer for sale the real estate mentioned in the decree," etc. On May 19, 1900, the master sold the premises to appellee, Edward F. Ford, for $2800.00 in cash. Attached to the report of sale was the certificate of the publishers of the *Carrollton Gazette,* certifying that they were the publishers of said *Gazette,* a weekly newspaper, printed in Carrollton, Greene county, Illinois, and that the advertisement annexed thereto was published in said paper in five consecutive weekly issues of the same; the first publication being on the 20th day of April, 1900, and the last publication on the 18th day of May, 1900.

The appellant, Lucy A. Wilson, who was the complainant below, and the adult defendants, F. Stuart Davis, Edna Birdwell and Julius Cannedy, filed exceptions to the sale, and to the report of sale by the master upon the following grounds: "(1) The sale reported was not properly or sufficiently advertised and sufficient and legal publication thereof was not made; (2) the said sale so reported was and is for a price which is wholly inadequate; (3) the premises so reported sold are worth at least $4800.00." The two infant defendants by their guardian *ad litem* also filed objections and exceptions to the report of the sale for the reasons that the sale price was

inadequate, and that, upon another sale, the premises would sell for more money. The court below overruled the exceptions to the report of sale, and ordered and decreed that the said sale and the report of the same should be approved.

From the order, overruling the exceptions to the report of sale and approving the same, the appellant, Lucy A. Wilson, and the defendants below, F. Stuart Davis, Julius Cannedy and Edna Birdwell prayed an appeal to this court, but the appeal has been perfected by the present appellant only, (the other parties praying an appeal not having filed an appeal bond).

Upon the hearing of the exceptions to the report of sale affidavits were filed and read in open court in support of the same by the parties objecting to the sale, and other affidavits were filed against said exceptions and in favor of said report of sale by the purchaser of the premises, the present appellee, Edward F. Ford.

Among the affidavits, filed in support of the report of sale, was that of the master in chancery who made the sale, in which he stated "that affiant personally posted notice of sale as by said decree required at the court house in Carrollton, Illinois, at least thirty days prior to said sale; that he mailed copies of said sale notices to be posted at all the places enumerated in the report of sale herein; that affiant states that he mailed a copy of said notice to R. W. Greene, of Kane, Illinois, and that he mailed notice of said sale to W. W. Waltrip, post-master, at Daum, to Ida Williams, post-mistress at Rockbridge, to Sheffield & Co., bankers, Greenfield, and to the post-master at Athensville, Illinois; that affiant made personal investigations and has found as a result of such investigations that all of said notices were posted thirty days previous to said sale in all the above places; that affiant also mailed a copy of said notices to Wrightsville, Illinois, but that the post-master has since died," etc.

JOHN C. WILSON, for appellant:

The chancellor has a broad, but not arbitrary, discretion in approving or disapproving masters' sales. But such discretion must be exercised according to the rules of law. Any arrangement made for the purpose of reducing competition at a judicial sale is fraudulent and void, and if the purchaser is a party to such agreement he can take nothing under his purchase and the sale will be set aside. *Quigley* v. *Breckenridge,* 180 Ill. 627.

While mere inadequacy of price is rarely sufficient to set aside a sale, courts will seize upon any circumstances which impeach the fairness of the transaction, as, if bidders have been kept away, and the property sold in such manner that its value could not be realized. *Schroeder* v. *Young,* 161 U. S. 334.

If the inadequacy in price can be connected with or shown to result from mistake, accident, surprise, misconduct, fraud or irregularity, the sale will generally be set aside. *Hobson* v. *McCambridge,* 130 Ill. 378.

Where an order of court directs the manner of sale of real estate, it is the duty of the officer selling to conform strictly to the court's order. *Reynolds* v. *Wilson,* 15 Ill. 394; *Vanbussum* v. *Maloney,* 59 Ky. 550.

When the confirmation of sale is opposed for want of proper notice the officer will be required to prove such notice has been given. *Roger* v. *Ocheltree,* 4 Houston, 452.

It is the duty of the officer selling property to post notices in such public places as would be most conducive to the highest price. *Nesbit* v. *Dallam,* 7 Gill & J. 511.

In *Tibbs* v. *Allen,* 29 Ill. 549, it is held that the statement of the commissioner that he gave proper notice is not sufficient. "Some proof other than his assertion should have been required,—at least a copy of the notice, with the affidavit of some credible person that he saw it posted in some public place, or, if printed in a newspaper, the usual certificate of the printer should have been required."

HENRY T. RAINEY, for appellee:

The circumstances connected with inadequacy of price must amount to fraud or irregularity in order to warrant a court in setting aside a sale, and circumstances which show that an unfair advantage was obtained by the purchaser, when taken in connection with gross inadequacy of price, will alone warrant the court to set aside a sale. *Morris* v. *Robey*, 73 Ill. 462; *Hobson* v. *McCambridge*, 130 id. 378; *Parker* v. *Shannon*, 137 id. 382; *Henderson* v. *Harness*, 184 id. 530.

Mere inadequacy is never sufficient to set aside a sale. *Connely* v. *Rue*, 148 Ill. 208; *Barling* v. *Peters*, 134 id. 607; *Quigley* v. *Breckenridge*, 180 id. 631.

Public policy requires that there should be stability in judicial sales and that they should not be disturbed for slight causes, otherwise property cannot be expected to bring its value at such sales. *Conover* v. *Musgrave*, 68 Ill. 58; *Quigley* v. *Breckenridge*, 180 id. 636.

The mere statement made by a witness that he will bid more at another sale will not be sufficient. A bond or guaranty should be offered before the court will be authorized to set aside a sale. *Quigley* v. *Breckenridge*, 180 Ill. 635.

There must be a certain assurance that the property will bring more. The money must be brought into court, or a sufficient guaranty that there will be no loss must be made. *Ayers* v. *Baumgarten*, 15 Ill. 444; *Quigley* v. *Breckenridge*, 180 id. 635.

When any judicial or official act is shown to have been done in a manner substantially regular, the burden of proof is on those who deny that the formal requisites to its validity have been complied with. 19 Am. & Eng. Ency. of Law, 49.

This presumption operates in favor of regularity and validity of official acts. 19 Am. & Eng. Ency. of Law, 43.

If the trustee acts honestly in selecting the medium of publication his act cannot be questioned. *Webber* v.

*Curtiss,* 104 Ill. 309; *Meacham* v. *Steele,* 93 id. 135; *Maass* v. *Hess,* 140 id. 576; *Lynn* v. *Allen,* 33 L. R. A. 780.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—One of the exceptions, filed to the confirmation of the report of sale, was that the premises were sold for an inadequate price. It is not altogether clear from the affidavits filed, that the premises were not sold for a fair price. The commissioners in partition reported that the premises were worth $4000.00. Five persons made affidavits to the effect that the eighty acres in question were worth from $4000.00 to $4800.00; but of these five persons three were interested in setting the sale aside, and only two were disinterested outside parties. On the other hand, five disinterested persons made affidavits to the effect that the eighty acres in question were worth only about $35.00 an acre or $2800.00, and that they were sold for a fair price. The sum of $2800.00, for which they were struck off to the appellee, was more than two-thirds of the valuation put upon the tract by the commissioners. It is shown by the affidavits that the present owners of some of the undivided interests in the tract purchased the same a few years before the present sale from the original owners thereof for $30.00 and $32.00 per acre.

It is claimed on the part of the appellant, that there were certain circumstances, connected with and attendant upon the sale, which prevented any higher bid than was made, and which defeated competition among the bidders. Among the circumstances mentioned is the alleged fact, that it was raining when the master made the sale. It appears, however, from the affidavits that the sale was well attended, and that, although there was a slight sprinkle of rain during the progress of the sale, there was nothing in the condition of the weather on the day of the sale to prevent the attendance of prospective purchasers or bidders. Another circumstance, said to

have interfered with the bidding at the sale, is the sup-
posed impression, alleged to have prevailed among the
bidders that the appellee, Ford, who owned a farm next
to the tract in question, wanted to obtain the same, and
was unwilling that bids should be made against him. In
other words, it is claimed that persons, who would have
been disposed to bid for the property, declined to do so
because of their friendship for the appellee. There is no
evidence in the record, that appellee induced anybody
not to bid, or that anybody failed to bid because of friend-
ship for him. Indeed, two of the persons, who are alleged
to have refrained from bidding for this reason, make
affidavits, in which they state that they were never re-
quested not to bid by the appellee; and one of them
swears that he would not bid any more than $2800.00 for
the property, if it should again be put up for sale.

It is also claimed, that there are persons, who, if the
property should be again offered for sale, would bid more
than the sum for which it was struck off to the appellee.
But it has been held that, where a sale of this kind is
objected to, the objectors, asking for a re-sale, should
bring the money into court, or offer to make an advance
bid, or give a guaranty or bond that there will be no loss
on a re-sale. (*Quigley* v. *Breckenridge*, 180 Ill. 627). Here,
no money was brought into court, nor any bond or guar-
anty furnished that any higher bid would be made upon
a subsequent sale.

Mere inadequacy of price is not a sufficient ground for
the setting aside of such a sale, unless the inadequacy is
so gross as to raise a presumption of fraud. (*Connely* v.
*Rue*, 148 Ill. 207). A re-sale in such cases will not be or-
dered, unless it has been shown that there has been fraud
or misconduct in the purchaser, or in the officer conduct-
ing the sale, or other person connected therewith, or un-
less it is made to appear, that a party interested has
been surprised, or led into a mistake by the conduct of
the purchaser, officer, or other person connected with the

sale. (*Barling* v. *Peters*, 134 Ill. 606). There was nothing of the kind at the sale here in question.

We are, therefore, of the opinion that the court below was correct in refusing to set the sale aside upon the ground of inadequacy of price, or because of any of the circumstances, alleged by appellant to have prevented fair and full competition, such as the condition of the weather, or the friendly feelings existing between the purchaser and other persons, who might otherwise have been inclined to make bids.

*Second*—But we are inclined to think, that the exception to the sale upon the ground that it was not properly or sufficiently advertised was well taken, and should have been sustained by the court below. It is true that, while the chancellor has a broad discretion in the matter of approving or disapproving of sales made by a master in chancery, yet the discretion thus vested in a court of chancery is not a mere arbitrary discretion, but must be exercised in accordance with established principles of the law. (*Ayers* v. *Baumgarten*, 15 Ill. 444; *Jennings* v. *Dunphy*, 174 id. 86).

The decree of sale required the master in chancery to give public notice of the sale and of the time, place and terms thereof, not only by publication in a newspaper printed and published in Greene county for at least four weeks prior to such sale, but also "by posting written or printed notice thereof in at least five of the most public places in the neighborhood in which said premises are situated." The record fails to disclose, that the master complied with the requirement of the decree in regard to posting notices of the sale.

In chancery cases the court fixes the time of sale; and the Chancery act authorizes the court to make and regulate the enforcement of decrees. (*Crosby* v. *Kiest*, 36 Ill. App. 425, and cases there referred to). Where an order of court directs the manner of the sale of real estate, it is the duty of the officer selling to conform to the order

of the court. A master in chancery derives his authority
to make the sale from the decree of the court alone; and,
unless he pursues the directions in the decree, his acts
will be set aside. (*Jacobus* v. *Smith*, 14 Ill. 359; *Augustine* v.
*Doud*, 1 Ill. App. 588; *Karnes* v. *Harper*, 48 Ill. 527; *Reynolds*
v. *Wilson*, 15 id. 394; *VanBussum* v. *Maloney*, 59 Ky. 550).

It is a well settled rule in cases of public sales by
officers of the court, that, although mere inadequacy of
price is not sufficient to set aside a sale of land by such
officer unless it is so gross as to shock the sense of the
court, yet, whenever objection is made in due form to the
confirmation of the sale upon the alleged ground that
proper notice of it has not been given or posted or pub-
lished by the officer, he will be required to prove that it
has been duly given in such manner by him. (*Roger* v.
*Ocheltree*, 4 Houston, 452). In *Tibbs* v. *Allen*, 29 Ill. 535, we
said (p. 549): "It may be further remarked, that no proof
whatever was furnished the court by the commissioner
making the sale, that he had given any public notice of
the sale. His mere statement sufficed. This was errone-
ous. Some proof, other than his assertion, should have
been required; at least a copy of the notice, with the
affidavit of some credible person that he saw it posted
in some public place, or, if printed in a newspaper, the
usual certificate of the printer, should have been re-
quired." In the case at bar, the master in chancery does
not state, either in his report of sale, or in the affidavit
filed by him when the sale was attacked, that the places,
at which he is alleged to have posted the notices, were
"the most public places in the neighborhood in which
said premises are situated." He posted one notice at the
court house in Carrollton, which is shown to have been
from eighteen to nineteen miles distant from the premises
in question. The other places, referred to by him in his
report of sale and in his affidavit, were post-offices and
banks distant from five to twenty miles from the eighty-
acre tract sold by him. In *Sowards* v. *Pritchett*, 37 Ill. 517,

the decree required, that the party to make the sale should "sell the land at public auction posting up written or printed notices thereof in five public places in the neighborhood;" and we there said (p. 522): "The objections taken to the report of the sale, are, that insufficient notices were given of the time, place and the terms of the sale, and that the property was sold at a sacrifice. It appears that five notices of the sale were posted, but whether they were in the most public places in the neighborhood, as required by the decree, does not appear. The affidavits in support of the validity of the sale particularly state where they were posted, but fail to say that they were the most public places.  *  *  *  The object of giving notice is that persons desiring to purchase may learn the time and place of sale, and whether these notices were calculated to convey such information does not appear.   The other notices are stated in the affidavits to have been posted on roads, but whether two of them were public roads is not stated.  *  *  *  Six different persons testified that they were expecting a sale, some of them wishing to purchase the lands, and were looking for notices, but saw none.   They all lived near to, and some of them adjoining, the land, and if the most public places had been selected, it is strange that so many persons seeking notice, were unable to obtain it.  *  *  *  If the number of notices required by the decree had been posted in the most public places in the neighborhood, could it be that none of them ever saw or heard of them?   To us it seems almost impossible.   Nor does it appear that more than one witness was introduced to prove that they had seen the notices, or that they were posted."

The affidavits, filed upon the hearing of the exceptions to the report of sale in this case, show that there was a post-office in the village of Fayette, within one mile or one mile and a half of the premises in question, but no notice was posted in Fayette, or at the post-office

in Fayette, although it is shown that said village and the post-office therein were public places in the neighborhood of said premises.   It appears that persons, living in and adjacent to the village of Fayette, frequented the post-office therein, and thereby such post-office became and was a public place in the neighborhood of the tract in question.

"Neighborhood, as applied to place, signifies nearness, as opposed to remoteness." (*Langley* v. *Barnstead*, 63 N. H. 246).   "Vicinity does not denote so close a connection as neighborhood.   A neighborhood is a more immediate vicinity." (*Coyle* v. *Chicago, etc. Railroad Co.* 27 Mo. App. 584).

In *Cummins* v. *Little*, 16 N. J. Eq. 53, it appeared that the land sold was one mile from a certain village, two miles from another, three miles from a third village and four miles from a fourth; that one notice of the sale was posted in the village four miles distant and other notices twelve or fourteen miles distant; the sale was set aside for insufficient advertisement; and the court there said: "The statute simply prescribes that the notices shall be set up at five public places.   A public place is a relative term.   What is a public place for one purpose, is not for another.   A blacksmith shop in the country, or a tree at the intersection of public roads, would be a public place within the contemplation of the statute, if in the vicinity of the lands, but it would clearly be an abuse of discretion, thus to advertise town lots in a place twenty miles distant.   That is a public and a proper place for setting up notices, which is likely to give information to those interested and who may probably become bidders at the sale."

In the case at bar, not a single person is produced to show that he saw one of the notices posted, except the one posted at the court house in Carrollton.   The master states in his affidavit, "that he mailed copies of said sale notices to be posted at all the places enumerated in the report of sale herein;" and he then proceeds to state that

he mailed copies of said notice to certain post-masters and bankers. The affidavit does not allege, that the notices thus mailed were stamped and addressed to the parties, to whom they are said to have been mailed. "The posting a letter, either in the proper place of deposit or by delivery to a postman, such letter being properly addressed and stamped, to a person known to be doing business in a place where there is established a regular delivery of letters, is *prima facie* proof of the reception of the letter by the person to whom it is addressed." (2 Wharton on Evidence, sec. 1323; *Henderson* v. *Carbondale Coal Co.* 140 U. S. 25.) In *Briggs* v. *Hervey,* 130 Mass. 186, it was held that "the depositing in the post-office of a letter, properly addressed with postage prepaid, is *prima facie* evidence that the person, to whom it was addressed, received it." In *Equitable Life Assurance Society* v. *Frommhold,* 75 Ill. App. 43, it was said: "The placing in the mail of an envelope properly stamped is not even presumptive evidence of the delivery of the same, unless it was properly addressed."

In the case at bar, there is no *prima facie* evidence that the notices, claimed to have been mailed by the master, were received by the persons to whom they were sent, because there is no statement that such notices were properly addressed or were properly stamped. The master did not himself personally post the notices, nor does any one employed by him to post them swear that they were posted. He admits in his affidavit, that one of the post-masters, to whom he sent a notice, had died since the sale, and he does not know whether such post-master received the notice sent to him or not, or whether he posted it or not. The master states in his affidavit, that he mailed a copy of such notice to R. W. Greene of Kane. R. W. Greene makes an affidavit, and states that he is cashier of the bank of S. F. Greene & Co. of Kane, and that he frequently receives through the mail notices of master's sales from the master in chancery who made

the sale in this case, and that, whenever he receives such notices, he always posts them up in said bank; but he says in his affidavit, that he does not remember the sale notice in this particular case, but that, if said notice of sale was sent to him or to the bank by mail by the master, he posted the same. The master also says that he sent a notice to Ida Williams, post-mistress in Rockbridge, but Ida Williams does not say in her affidavit that she posted any notice in the present case, although she does state that she posted in the post-office at that place notices of master's sales when sent to her. The master swears, that he mailed a notice of said sale to Sheffield & Co., bankers, at Greenfield. John R. Sheffield and Ralph Metcalf, who were members of the bank of Sheffield & Co., at Greenfield, both make affidavits in this case, but neither of them states that he received any notice of said sale, or that he posted any such notice.

It is true that the master states in his affidavit, that he had made personal investigations, and found, as a result thereof, that all of said notices were posted thirty days previous to said sale in the places mentioned by him in his report and affidavit; but he fails to disclose what investigations he made, or how he made them. No person is produced by him, who posted any one of said notices, or who saw any one of said notices after it was posted. This case comes within the purview of the statement, made in the case of *Terry* v. *Swinford*, 41 S. W. Rep. 553, where it is said: "The commissioner does not pretend to know whether the notices were posted at the proper places or whether in the proper time, and the proof introduced in support of the sale fails to show that such posting had been made."

In *Pyle* v. *Jeans*, 4 Harr. 201, "the court set aside the sale on the ground that there was no proof that the notice was put up in Pencader Hundred ten days before the sale. It is true the presumption of law is that the sheriff did his duty, but that presumption cannot operate against

proof by the sheriff himself, that he did not put up the notice in Pencader, but sent it out by a stranger, and there is no proof that it was put up ten days before the sale." So, here, while the presumption of law is that the master in chancery in this case did his duty, yet that presumption cannot operate against the proof, furnished by the master himself, that he did not put up the notices in the places named by him, but sent them out by mail to strangers, and there is no proof that they were actually put up by such strangers to whom they were sent.

The affidavits, filed by the appellant herein and by the defendants below who objected to the report of sale, state that said defendants made investigations and inquiries concerning the posting of the notices mentioned in the master's report, and state, as the result of their investigations, that the master in chancery did not post any notice of sale, except that which was posted at the court house in Carrollton. The statement as to investigations thus made by the master, leading to the result that the notices were posted, is overbalanced by the statements of the defendants as to their investigations, leading to the result that the notices were not posted.

Inasmuch as the proof fails to show that the notices of sale were posted by the master in the manner and at the places required by the terms of the decree, we are of the opinion that the court below should have set aside the sale, and ordered a re-sale of the property.

Accordingly, the decree of the court below, approving the report of the sale and overruling the exceptions thereto, is reversed, and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.    *Reversed and remanded.*