# CITY OF CHARLESTON, Respondent, v. JESSE COKER, Appellant.

### Springfield Court of Appeals, January 13, 1917,

1. **DEFINITIONS: Neighborhood.** The term "neighborhood" as used in a prosecution for violating a city ordinance by disturbing "the peace of a neighborhood" is not restricted in its meaning to "a residence district," though this perhaps is the most general meaning. It has the broader meaning of "a place near," "vicinity," "adjoining district."

2. **CITY ORDINANCE: Prosecution for Violation of: Evidence.** Prosecution for violation of a city ordinance by "disturbing the peace of a neighborhood." Evidence reviewed and considered sufficient to warrant the submission of the case to the jury.

3. **CRIMES AND PUNISHMENTS: Disturbance of the Peace: Negative Evidence.** To sustain the charge of disturbance of the peace of a neighborhood it is not necessary to prove that every individual composing the community or neighborhood was disturbed and the charge cannot be disproved merely by negative evidence to the effect that certain residents of the neighborhood did not have their peace disturbed.

4. **INSTRUCTIONS: When Additional Given.** The trial court may give additional proper instructions to the jury at any time before their verdict.

Appeal from Mississippi County Circuit Court.—*Hon. Frank Kelly*, Judge.

AFFIRMED.

*Russell & Joslyn* for appellant.

*Frank M. See* for respondent.

FARRINGTON, J.—On July 24, 1915, at Charleston, Mo., on Commercial street, the appealing defendant exercised his inalienable right to fight, and since then has been trying to adjust the matter with society. P. A. Addy participated in the fight but not in the trial from which this appeal resulted.

Charleston has an ordinance providing that "if any person or persons in this city shall willfully disturb the peace of any neighborhood . . . or of any person by . . . striking or fighting another . . . he or they shall be deemed guilty of a misdemeanor." Defendant was charged with violating that ordinance— that he disturbed the peace of the neighborhood, to-wit, the neighborhood in the vicinity of the Sanitary Restaurant on Commercial street, by fighting Addy.

No one testified as to how or why the fight started. Two witnesses who were standing fifteen feet away say they heard a woman (thought to have been Addy's wife) screaming and that they turned around and saw defendant and Addy fighting. One of these witnesses was the owner of the Sanitary Restaurant. The fighters were on the ground, defendant on top, and Addy "was trying to fight, but it looked like he wasn't doing much." Witness Simpson said he saw defendant "hit a lick or two." The fight occurred in the morning, or about noon, in front of the Sanitary Restaurant on the main business street, in the immediate vicinity of (at least) the postoffice and a bakery. One witness was a little over a block away (near the express office and a bank) when he heard of the trouble and he ran to the scene. He testifies that he saw a crowd assemble there "from most every direction." On cross-examination he admitted that it didn't disturb his peace. Another witness said a crowd gathered—"like any fight, runs up when there is excitement." If the participants uttered a sound, no witness testified to having heard it.

Defendant asked the court to instruct the jury that the verdict must be in his favor, but this was refused. Defendant did not introduce any evidence, and the record does not disclose that he requested any other instructions.

Defendant was convicted by the jury and his punishment assessed at a fine of fifty dollars.

It is contended, first, that the court erred in overruling defendant's demurrer to the evidence, the argument being that under all the evidence the defendant's

conduct did not disturb the peace of a "neighborhood," or of any person.

Appellant would have us hold that by the word "neighborhood" in the ordinance is was meant to confine the application of the ordinance to a residence district, and this use of the word "neighborhood" is perhaps the most general. But a glance at any dictionary will show that it has a broader meaning also. In State v. Fogerson, 29 Mo. 416, defendant was indicted under the statute for willfully disturbing the peace of the neighborhood. The opinion reveals that the offense was committed on the public square in the town of Lebanon, and the court referred to it as a "neighborhood," and sustained the conviction. In Coyle v. Railroad, 27 Mo. App. 584, the court was dealing with a statute prohibiting the bringing, or moving through, the State of diseased cattle, the liability being limited to the disease "communicated to any other animal or cattle in the neighborhood or along the line of such transportation or removal." The court there held to that definition of "neighborhood" which indicated "a place near," "vicinity," "adjoining district." In State v. Johnson, 149 Mo. App. 119, 130 S. W. 110, defendant was prosecuted under the statute for willfully disturbing the peace of the neighborhood of the public square at the intersection of South street in the city of Springfield by cursing, etc., and challenging to fight. The State introduced only two witnesses who supported the charge. The court said: "Neither of these witnesses lived near the public square, and there was no testimony offered to show that any person who lived or *was in business* in that part of the city, knew anything about the trouble. It was also shown that it was sometime after six o'clock, and that *the stores were generally closed at that hour*." [Italics are ours.] The court there was clearly recognizing that the public square at the intersection of South street was a "neighborhood." The case of State v. Hughes, 82 Mo. l. c. 89, is so unlike our case on the facts as to be inapplicable to the point under discussion. We hold

that the evidence to the effect that defendant engaged in a fight on Commercial street in Charleston in close proximity to certain business houses mentioned by the witnesses at or about noon on July 24, 1915, under the circumstances detailed, was sufficient to warrant the submission of the case to the jury.

Now the act must be calculated to disturb the peace, or have that effect. In City of De Soto v. Hunter, 145 Mo. App. l. c. 436, 122 S. W. 1092, the court said: "A disturbance of the peace being the gravamen of the charge, whether the defendant's conduct was calculated to disturb and did disturb the peace . . . is for the jury to say." Certainly, where the defendant is engaged in a fight on a business street and a crowd assembles, it is not essential that the witnesses swear that their peace was actually disturbed thereby.

This disturbance did not occur in the evening after closing time for the stores, but at about noon. The fight occurred in front of the Sanitary Restaurant, and the owner of the place saw the fight and was a witness for the city at the trial, so that the case is not governed by State v. Johnson, 149 Mo. App. 119, 130 S. W. 110, as to this question any more than it is as to the question first discussed.

In State v. Fogerson, supra, it was objected that the court erred in excluding the testimony of three persons introduced by defendant to prove that they resided on the public square, and were present at the time of the alleged disturbance, and that neither they nor their families were disturbed. The court said: "This evidence, we think, was properly excluded. It had no tendency to prove the charge in the indictment, namely, that the peace of the neighborhood was disturbed by the defendant's conduct, and this was the matter of inquiry—not whether one or two individuals considered themselves disturbed. That they were not, or may not have been, disturbed by the conduct of the defendant was not necessarily inconsistent with the truth of the charge against him, that the peace of the neighborhood was disturbed. To sustain the charge it is not neces-

sary to prove that every individual composing the community or neighborhood was disturbed, nor could the charge be disproved by the kind of negative evidence offered with respect to two or three persons.''

Defendant complains that the second instruction is erroneous in that it might have misled the jury into finding defendant guilty even though it was Addy's conduct that really disturbed the peace, but cites no authority. In view of the undisputed evidence which we have detailed, together with the fact that the court did in the first instruction make it clear that it was the defendant's conduct the jury was to pass upon by directing that unless the jury found that defendant wilfully disturbed the peace of the neighborhood they would acquit him. The jury could not have been misled. [See, State v. Fogerson, 29 Mo. l. c. 417, 418; State v. Miller, 159 Mo. l. c. 121, 60 S. W. 67.] Besides, there was no evidence before the jury that Addy did anything that defendant did not do.

After defendant's attorney had made his argument and—quoting from defendant's (appellant's) abstract—''indicated to the jury in his argument that the defendant might have acted in self-defense, the court read instruction No. 5 and gave Mr. Russell the privilege of arguing the same, which he did.'' Instruction No. 5 was as follows: ''The court instructs the jury that it does not devolve upon the city to show who started the fight or who was the aggressor, and if the defendant acted in self-defense in repelling the assault made upon him, then it devolves upon the defendant to show that he acted in self-defense.'' Appellant's attorneys are very severe in their criticism of the conduct of the trial judge in giving this instruction, characterizing the instruction as an answer to an argument of one of the attorneys for the defendant. It may be remarked  in behalf of the trial judge that defendant's attorney, according to the abstract prepared and submitted here by the defendant, made a point in his argument that defendant might have acted in self-

defense when there was not a syllable in the entire record to justify such a statement. That the statement was not a mere slip of the tongue is indicated by defendant's cross-examination of witness Simpson where the following appears (being a blending of both question and answer in the abstract—the narrative form): "I don't know whether Addy jumped on Coker or not." Thus did the defendant fail in the only intimation of self-defense.

Defendant does not cite any authority in this connection. It is settled that the court has the right to give the jury additional proper instructions at any time before their verdict. [State v. Furgerson, 152 Mo. l. c. 99, 53 S. W. 427.] And, of course, after the close of the argument. [State v. Bickel, 7 Mo. App. l. c. 572; The Joplin Waterworks Co. v. City of Joplin, 177 Mo. l. c. 531, 76 S. W. 960.] It is held, also, in Drumm-Flato Commission Co. v. Gerlach Bank, 107 Mo. App. 426, 436, 81 S. W. 503, that the trial court may further instruct the jury when made necessary by argument of counsel in their speeches to the jury. After the court gave the instruction complained of, defendant's attorney was permitted by the court to make an argument upon it to the jury. [Clancy v. City of Joplin (Mo. App.), 181 S. W. l. c. 122, 123.]

Finding no reversible error nor misconduct of any kind on the part of the trial court, the judgment of conviction is affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.